**J. E. HAMILTON, Plaintiff**

**v.**

**R. JAMES HAMILTON, Defendant**

Fam. No. D245/92

Territorial Court of the Virgin Islands

Div. of St. Croix

December 6, 1996

LOLITA D. JONES DE PAIEWONSKY, ESQ., Christiansted, St. Croix, U.S.V.I., *for Plaintiff*

JOEL HOLT, ESQ., (Holt & Russell), St. Croix, U.S.V.I., *for Defendant*

STEELE, *Judge*

## MEMORANDUM OPINION & ORDER

Plaintiff, J.E. Hamilton, brings this action against her former husband, R. James Hamilton, seeking an award for permanent alimony. The action was heard before this Court on July 15, and August 2, 1996. Counsel for both parties submitted summation briefs subsequent to the final hearing. As the parties have already settled the issue of entitlement to the marital homestead, the issue before this Court becomes rather straightforward: What equitable and pecuniary interest is the plaintiff-wife entitled to from her defendant-husband as alimony.

## I. Facts

The factual backdrop of this case could only be described as poignantly bitter, replete with deep familial animosity. Inimical allegations, not limited to spousal indolence, irresponsibility, and more significantly, tax evasions, permeates the hearing transcripts. Notwithstanding, the Court, as a fact-finder, predicates its factual findings upon the credibility of the parties as evidenced by their demeanor and manner, and the integrity of the corroborating documents introduced into evidence. The findings of this Court is based on a comprehensive and thorough review of the transcripts, evidentiary documents consisting of tax returns spanning ten years, financial statements, bank account and stock portfolio statements.

However, due to plaintiff's repeated admission of tax evasion, and a significant discrepancy between the figures stated in the tax returns and the parties high standard of living, the Court finds it difficult at this point to exercise its discretion in determining the proper alimony award. Accordingly, to ascertain the true worth of the parties, and thus the appropriate alimony award, the Court will direct the Virgin Islands Bureau of Internal Revenue, hereinafter "VIBIR," to make an assessment and study of the parties income tax returns, and report back the agency's findings within 60 days. Based on such results, the Court will then decide the proper alimony award. The Court, however, mindful of the plaintiff-wife's need for adequate support makes the following factual findings for purposes of providing reasonable sustenance pending the outcome of the VIBIR study.

4

Plaintiff-wife, J. E. Hamilton, hereinafter "plaintiff," was married to defendant-husband, hereinafter "defendant," on December 31, 1964. The marriage produced three children; ages ranging from 24 to 12. This marriage became defunct with the filing of a divorce by plaintiff, on October 15, 1992.

By the end of their conjugal life, the parties had amassed valuable assets, both real and personal. The real assets consist of three parcels of realty: two parcels with residential structures, and one parcel with a water purifying business. The personal property comprises three automobiles, and numerous Certificates of Deposits, hereinafter "CDs." The CDs were apportioned by the parties, per a stipulated agreement on November 30, 1993. Remaining, however, are allegations of improper division and fraudulent concealment of one CD, valued at $30,000. In her summation brief, plaintiff alleges that defendant has surreptitiously cashed a $30,000 CD that was never divided between the parties. Defendant counters, claiming that defendant in fact owes plaintiff only $10,000 because of plaintiff's excessive withdrawal from another CD worth $110,000, which the parties also agreed to apportion evenly.

The Court, however, finds that each party has to a certain degree received roughly half of the proceeds of the CDs. The fact that neither party has ever pursued an action for a constructive trust, fraudulent transfer, conversion, or ever filed for an injunction or order to show cause since the stipulated agreement, entered by Judge Brady, evinces that division of the CDs was to a great degree reasonably accomplished. Furthermore, at the date of the first hearing on July 15, 1996, all of the cash in the CDs were withdrawn and disbursed by the parties.

Plaintiff currently resides with the parties' two daughters in what was the marital abode at 31 Castle Coakley, which the plaintiff owns in fee simple, encumbrance free. The residence consists of three units. The plaintiff occupies the first top unit, while the bottom second unit is rented for $400 per month. The third unit has not been occupied due to an outstanding utilities bill in the amount of $400. Further, plaintiff admitted on cross-examination that a fourth unit could be added if certain modifications were performed, rendering the property capable of poten-

tially producing $1,200 per month in rental income. The parties own a second residence located at 34 Castle Coakely. In a stipulation, dated November, 1993, the parties agreed that the defendant would retain any proceeds from any rent under $1200, with any amount over $1200 be evenly divided between the parties. To date, the property has not been rented for above $1200.

Last but not least, the parties initiated and managed a family business called "Purified Water Inc." The parties filed joint income tax returns for the years 1984-1992. These returns indicate the following gross profits and net incomes (gross profits — expenses):

| Year | Gross Profit | Net profit(loss) |
|------|-------------|------------------|
| 1984 | $ 38,250 | $ 19,252 |
| 1985 | 20,150 | 3,578 |
| 1986 | 10,650 | 421 |
| 1987 | 48,530 | 31,131 |
| 1988 | 47,582 | 15,376 |
| 1989 | 95,081 | 16,958 |
| 1990 | 243,937 | 47,274 |
| 1991 | 207,357 | 9,382 |
| 1992 | 230,518 | 26,552 |
| 1993 | 216,474 | 6,885 |
| 1994 | 127,352 | 27,818 |
| 1995 | 137,471 | (22,035) |

The parties credit the remarkable increase in gross profits during the years 1989-1993 to the prodigious demand for purified water during the aftermath of hurricane Hugo in 1989, coupled with the limited number of competitors on the island during the same period. However, business worsened when competitors flooded the market, and potable water from nearby Puerto Rico was introduced to the island by some of the large food chains. Accordingly, defendant testified that he was forced to cut prices by almost fifty-percent to remain competitive. Further, demand for water decreased as restorations of local infrastructure and homes began materializing. Notwithstanding, defendant still derives his income from the water business, and has made monthly child support payments of $600.

Plaintiff is currently unemployed, and has been so since 1992, the year of divorce. Accordingly, plaintiff has not filed a tax return

since 1992. Plaintiff submits that her failure to work is mainly due to her medical condition, which she alleges consists of an injured back, vision problems, and hair loss. However, the only evidence introduced regarding plaintiff's medical condition is a doctor's appointment. At the conclusion of her testimony, plaintiff requested a $250,000 lump-sum alimony award. In justifying her alimony claim of $250,000, plaintiff submits that although the income tax returns demonstrate relatively low net incomes, the true earning power of the defendant and assets go well beyond what is contained in the tax returns. Plaintiff's counsel buttresses this point in her summation brief by citing the parties' "comfortable life style." A life style that plaintiff's counsel describes as encompassing real estates, three cars — all debt free — CDs, bank accounts, travels, and vacations. Plaintiff, under oath, volunteered that the returns were grossly understated so that the parties can avoid paying taxes on their true income. In effect, plaintiff expressly admits that tax evasion has been the norm in the parties' tax filings. Plaintiff further points to the fact that most of their purchases and bills were defrayed by means of cash, and hardly ever by credit. This practice of using cash for most of their purchases has precluded the parties from ever acquiring any credit, despite the parties' seemingly respectable life-style.

Based on the above facts, and since the issue of the marital homestead has already been settled by the parties, the court is asked to determine the plaintiff-wife's entitlement of alimony from her defendant-husband.

## II. Discussion

### A. Background

■ The law of alimony is well settled in this jurisdiction. Since the 1973 amendment of 16 V.I.C. § 109, the law of alimony has shifted from a fault-based system to a more contemporary need-of-the-spouse scheme, effectively rendering the amended 16 V.I.C. § 109 a need-based rule; 16 V.I.C. § 109, as amended April 24, 1973, provides in pertinent part:

"Whenever a marriage is declared void or dissolved the court may, *without regard to* any determination that the

7

breakdown of the marriage was *the fault of one party or the other*, further decree —

(3) for the recovery for *a party determined to be in need* thereof an amount of money in gross or in installments, as may be necessary for the support and maintenance of such party;

16 V.I.C. § 109(3) (emphasis supplied). Since its amendment in 1973, section 109(3) has undergone numerous interpretations by the Virgin Islands Courts, as well as the Third Circuit Federal Courts. *See Viles v. Viles*, 5 V.I. 334, 250 F. Supp. 211 (D.C.V.I. 1963); *Del Pescho v. Del Pescho*, 6 V.I. 440, 386 F.2d 835 (3rd Cir. 1966); *Poe v. Poe*, 7 V.I. 30, 409 F.2d 40 (3rd Cir. 1969); *Barrows v. Barrows*, 11 V.I. 129 (3rd Cir. 1973).

■ Such judicial interpretations spawned a well-known maxim, which holds that a Court has broad discretion in evaluating the operative factors inherent in alimony awards. Such operative factors include the husband's personal income, needs of the ex-wife, and the husband's ability to pay for those needs. *Viles*, 5 V.I. at 334, 250 F. Supp. at 211. Other factors taken into consideration include, checking account balances, whether the wife had sought employment, living expenses, and debts and obligations outstanding. *See Id.* Further, the Court must consider the overall circumstances surrounding the parties, the wife's necessities and the husband's financial ability, the physical condition of the parties, and the nature of their life together and the wife's independence and ability to earn her own way. *Alleyne v. Alleyne*, 18 V.I. 544 (D.C.V.I 1981).

Furthermore, implicit in this broad discretion is the Court's role as a fact-finder to discern the facts and weigh the evidence in determining appropriate alimony. The Court's ability to exercise discretion in alimony proceedings presupposes the presence of sufficient probative and credible evidence evincing palpable need by the parties. Lack of such necessary credible evidence precludes the Court from evaluating the true needs of the parties, and thus exercising reasonable discretion in determining alimony. Accordingly, and logically, the Court cannot exercise its discretion fairly and reasonably where the evidentiary record is teeming with inconsistent oral testimony relative to the submitted evidence.

In the event that the Court's discretion becomes difficult to exercise in awarding permanent alimony due to insufficient credible facts and evidence, the Court will resort to its powers and authority under 16 V.I.C. § 108, Interlocutory Orders, to issue a temporary award of alimony pending the Courts' obtaining of the necessary facts to determine permanent alimony under 16 V.I.C. § 109.

*B. Determination of Temporary Alimony Award*

In the instant case, although we find that permanent alimony, under 16 V.I.C. § 109, cannot be determined, at this point, as a result of the parties' contradictory testimony, and lack of credible evidence, the Court, for purposes of determining temporary award pending the ordered study by VIBIR, finds the following circumstances relevant and operative: plaintiff's capacity for gainful employment and needs, the defendant's earning capacity to the extent of the income producing capability of the family business, and the value of the marital homestead and its accompanying rental potential.

1. Plaintiff's Earning Capacity

In her testimony, plaintiff avers that her failure to seek gainful employment could be imputed to adverse medical conditions. Plaintiff alleges that an injured back, deteriorating vision, and hair loss have rendered her incapable of finding employment since 1992. Plaintiff's only evidence regarding her medical condition is an appointment date with a physician in Puerto Rico. Clearly, plaintiff has not posited evidence regarding her medical condition. Further, plaintiff's testimony regarding her medical condition came as an unfair surprise to defendant, due to her failure to apprise the Court and defendant's counsel at the pre-trial conference, or at any other time, of her intent to raise her medical condition as a triable issue. Accordingly, this Court will not consider plaintiff's allegations of medical adversity in fashioning an award of temporary alimony, first for lack of evidence, and second, for violating the discovery rules of the FEDERAL RULES OF CIVIL PROCEDURE.

Plaintiff currently owns, in fee simple, and resides at the former marital abode, 31 Castle Coakley. This property consists of three

units, with the possibility of a fourth unit being added if some renovations are undertaken. Plaintiff resides in one unit, while renting another unit for $400 per month. A third unit remains vacant because, according to plaintiff, a utilities bill of $400 still owing on the same unit has made it impossible for her to rent it. While the property, with the addition of a fourth unit, could produce rent of $1200 per month, it currently produces only $400 per month from one unit. However, in the event that the utilities bill is cleared, the marital abode could conservatively realize a rental income of $800 per month, or $9,600 per year.

In fashioning a temporary order, under 16 V.I.C. § 108, the Court will consider the current rental potential of the property, and not the property's future potential rental capacity. Although the plaintiff currently receives $4800 in yearly rental income from one unit, we find that the plaintiff could with reasonable effort be deriving some $9,600 per year in rental income, assuming plaintiff pays the negligible $400 utilities bill still outstanding on the third unit. Accordingly, we conclude that plaintiff is able to earn at least $9,600 per year in rental income.

We next examine plaintiff's prospects of gainful employment. Plaintiff testified that she has not worked, or sought employment, since 1992. Plaintiff offers no probative evidence for her failure to obtain gainful employment, other than her unsubstantiated allegations of medical adversity. The Court finds plaintiff's excuse without merit. The evidence demonstrate that plaintiff is a woman with valuable experience in initiating and managing businesses, which is evidenced by plaintiff's prolific contributions to the family water business. Further, prior to establishing the family water purifying business, plaintiff established and managed a nursery business, and was employed with a private company. Accordingly, it is only logical and reasonable to conclude that plaintiff has not lost all ability to obtain gainful employment after divorce. Thus, assuming conservatively that plaintiff obtains employment paying minimum wage of $4.75 per hour, she would be able to earn nearly $10,000 per year.

Plaintiff submits that the monthly expenses for herself and two daughters is $2,823.00. This figure, however, includes $940 for children expenses. As the parties have already agreed upon

temporary child support, and the father has remained current on his support payments, the Court therefore shall exclude the children's expense portion. To include the children's expense in our computation of the temporary alimony award would result in the indirect modification of the child support agreement, something well beyond the ambit of this matter. Accordingly, we find that plaintiff's personal monthly expenses is more properly defined at $1,883 ($2,823 − $940 child support). Because we have previously determined that the wife is living rent free in the former marital abode, and has at minimum the capacity to earn $10,000 per year in wages, and $9,600 in rental income with the potential for more rental income, for a total of at least $19,600 per year, the Court determines that the need of the wife shall be the difference between the $1,883 monthly expenses, and the amount she would otherwise be able to earn of $1,630 ($19,600 ÷ 12 months), which amounts to an additionally needed support of $253 per month.

2. Defendant's Earning Capacity

We now turn our attention to the defendant's earning capacity. Currently, defendant is residing in a home owned by his mother, rent free. Further, defendant still manages Purified Water Inc., although he claims a loss of $22,035 for the year ending 1995. Due to admissions by plaintiff of tax evasions, while under oath, and improper reporting of income, the Court finds the income reported in the parties' joint tax returns doubtful and thus not reflective of the parties' true financial worth. Notwithstanding, the Court is aware that the parties' high standard of living, and valuable assets, could not have been obtained by abnormally low net incomes of $6,885 for 1993, 27,818 for 1994, and a substantial loss of $22,025 for 1995. Accordingly, we find that the defendant possesses the ability to make the temporary alimony payments of $253 per month pending the ordered audit by VIBIR. In sum, the Court finds the $253 per month temporary alimony award reasonable under the facts and circumstances of this case.

C. *Other Marital Assets: 57 & 34 Castle Coakely*

As this Court has no jurisdiction to divide marital assets, other than the marital homestead and spousal personal property,

11

in divorce proceedings, *see Dyndul v. Dyndul*, 13 V.I. 376, 541 F.2d 132 (3rd Cir. 1976), 16 V.I.C. § 109(4) , any requests for partition of the marital real property shall be adjudicated in a future civil action for partition, or by way of amicable settlement if the parties so wish.

## III. Conclusion

In alimony proceedings, the Court is vested with broad discretion in fashioning alimony awards. The propriety of the Court's discretion presumes an evaluation of all the facts on a case-by-case basis. As the factual visage of each case differs sharply from the other, the Court must customize its judgment and fact-finding eyes to the unique needs of the parties, and determine alimony based upon the emotional, physical, and financial needs of a spouse, as well as the relevant needs of the other spouse. Needs of the parties must be established by credible and germane evidence of such competence as to enable the Court to ascertain the equitable and just provisions for the parties' needs.

■ With this in mind, where the testimony of the parties is so inconsistent, and contradicts the introduced evidence, the Court begins to find it difficult to fashion proper relief, and thus exercise reasonable discretion. In the instant case, the parties' testimony regarding the worth of the family business, and the earning capacity of the defendant, contradicts the amounts stated in their tax returns. Accordingly, based on the reasoning and the fact findings set forth above, this Court finds an award of $253 per month as temporary alimony reasonable, pending the results of the VIBIR audit of the parties true financial position.

### ORDER

The above captioned divorce matter was heard before the Court on July 15, and August 2, 1996, in a proceeding to determine alimony for the plaintiff-wife. Testimony, more than twelve hours in length, was provided by the parties. Documents not limited to tax returns and financial statements were also introduced into evidence. The Court having duly considered the testimony and circumstances of the parties, and the evidence, and having con-

12

cluded at this juncture that same evidence and testimony are insufficient for the proper determination of a final award of alimony, and mindful, however, that a reasonable temporary award is essential for the proper sustenance of the plaintiff-wife, it is hereby

ORDERED that defendant-husband, R. James Hamilton, provide, plaintiff-wife, J.E. Hamilton, the amount of $253 per month as temporary alimony, pending the Court's determination of the parties true financial worth.

ORDERED that an audit by the Virgin Island Bureau of Internal Revenue be made of the parties' tax returns for the proper determination of the parties' financial worth within Sixty (60) days from the date of entry of this order.

ORDERED that copies of this order be issued to the parties and the Virgin Islands Bureau of Internal Revenue, c/o attorney Gizette Canegata, associate legal counsel of the Virgin Islands Bureau of Internal Revenue.

DONE AND SO ORDERED this 6th day of December 1996.