BARBARA PORTNER, PLAINTIFF-APPELLANT, v. MORTON PORTNER, DEFENDANT-RESPONDENT.

Argued February 7, 1983—Decided May 31, 1983.

*Ronald A. Graziano* argued the cause for appellant (*Tomar, Parks, Seliger, Simonoff & Adourian,* attorneys; *Lois Seiden Garber,* on the brief).

*Clyde Walker, Jr.,* argued the cause for respondent (*Keyko & Walker,* attorneys).

The opinion of the Court was delivered by

GARIBALDI, J.

Once again this Court addresses the problem of determining the terminal date of a marriage for the purpose of identifying assets eligible for equitable distribution under *N.J.S.A.* 2A:34–23.

Barbara Portner ("wife") and Morton Portner ("husband") were married on September 24, 1960 in Philadelphia, Pennsylvania. From that date until August 1974, the Portners resided together in New Jersey. One child, a son, was born of the marriage. In August 1974, the husband left the marital home in New Jersey and moved to Philadelphia. On November 6, 1974, the wife filed in the Superior Court of New Jersey a complaint for separate maintenance, based on claims of desertion and nonsupport, and on February 24, 1975, an order for support *pendente lite* was entered.

On August 26, 1975 the husband filed a complaint for divorce in Pennsylvania on the ground of indignities. This complaint was dismissed for lack of prosecution because the husband was

unable to prove a cause of action under Pennsylvania law. While the Pennsylvania action was still pending, the husband moved to Delaware, where he again filed for divorce. This action was also dismissed, apparently due to the husband's misrepresentation that there was no other action pending with respect to the dissolution of his marriage.

On December 11, 1979, the wife amended her New Jersey complaint for separate maintenance to demand a judgment of divorce on the ground of separation for 18 months. In January 1980, the husband filed an answer and also a counterclaim for divorce, relying likewise on the ground of an 18-month separation. A judgment of divorce was entered on September 22, 1980.

Because of the husband's alleged ownership of a townhouse in Philadelphia, the terminal date of the marriage is significant for the purpose of equitable distribution. If the wife were to establish that her husband, in fact, owns the townhouse, it would be subject to equitable distribution. The trial court determined that the date the parties separated in 1974 was the terminal date. The Appellate Division reversed, 186 *N.J.Super.* 410, holding that for purposes of equitable distribution the marriage terminated on August 26, 1975, the date the husband filed his complaint for divorce in Pennsylvania. Judge Antell dissented because he concluded that under *Painter v. Painter,* 65 *N.J.* 196 (1974), and *Brandenburg v. Brandenburg,* 83 *N.J.* 198 (1980), the marriage did not end until December 11, 1979, the date the wife amended her complaint to demand a judgment of divorce.

On the basis of the dissent, the wife filed an appeal as of right to this Court, pursuant to *R.* 2:2–1(a)(2). Thus, the only question before us is: When did the marriage end, for the purpose of ascertaining those assets that were acquired during the marriage and therefore are subject to equitable distribution? For the reasons expressed below, we agree with Judge Antell that the terminal date of the marriage was the date the wife amended her complaint to demand a judgment of divorce.

## I.

The Divorce Reform Act of 1971, *L*.1971, *c.* 212, changed matrimonial law in New Jersey by providing for the equitable distribution of marital assets:

> In all actions where a judgment of divorce or divorce from bed and board is entered the court may make such award or awards to the parties, in addition to alimony and maintenance, to effectuate an equitable distribution of the property, both real and personal, which was legally and beneficially acquired by them or either of them *during the marriage.* [*N.J.S.A.* 2A:34–23 (emphasis added)]

On several prior occasions, this Court has considered what span of time the Legislature intended by the words "during the marriage." See *Brandenburg v. Brandenburg,* 83 *N.J.* 198 (1980); *DiGiacomo v. DiGiacomo,* 80 *N.J.* 155 (1979); *Smith v. Smith,* 72 *N.J.* 350 (1977); *Carlsen v. Carlsen,* 72 *N.J.* 363 (1977); *Chalmers v. Chalmers,* 65 *N.J.* 186 (1974); *Painter v. Painter,* 65 *N.J.* 196 (1974). Unfortunately, there is no statutory definition of this phrase, nor is there any relevant legislative history.[1]

We first encountered the phrase "during the marriage" in the watershed case of *Painter v. Painter.* There, we discussed several possible interpretations of the phrase. First, we considered a literal construction, under which the terminal date of a marriage would be the date the divorce judgment was granted. In most cases, however, this interpretation would necessitate a bifurcated trial because "[i]t would normally not be practical to introduce at the trial, evidence as to the value of assets determined as of that day." *Painter,* 65 *N.J.* at 217. Therefore, we rejected this literal interpretation, in recognition of the practical problems it would pose.

Our opinion then considered a more expansive interpretation that would exclude from equitable distribution any assets that "were acquired after it could be shown that there was an irretrievable breakdown of the marriage." *Id.* We concluded

---

[1]As we noted in *Painter,* 65 *N.J.* at 217, and *Brandenburg,* 83 *N.J.* at 204 n. 2, the equitable distribution provisions were added to the Divorce Reform Bill during its passage. There are no committee reports.

that such a rule "would be unworkable." *Id.* at 217. We asked how is one to establish with any reasonable precision when an irretrievable breakdown in the marital relationship occurred. We thought the better and more practical rule to be the date of the filing of the complaint that would fix the marital termination date for equitable distribution purposes. *Painter,* 65 *N.J.* at 218. We acknowledged that the rule would not provide certain and ready answers in all cases concerning equitable distribution. *Id.* at n. 7. We further recognized that the rule was somewhat arbitrary and was chosen primarily because it presented the most workable and objective rule among all the alternatives we considered. *Id.* at 218.

Our present examination of *Painter* and its progeny persuades us that the *Painter* rule still is the most feasible and practical rule to ascertain when a marriage has ended. Thus, we reaffirm that the *Painter* rule is the standard to be applied in determining the terminal date of a marriage for equitable distribution purposes. However, we acknowledged in *Painter* and expounded in *Rothman v. Rothman,* 65 *N.J.* 219 (1974), the reasons which induced the Legislature to provide for equitable distribution. It was unfair to subject a divorced wife to the uncertainty inherent in alimony. This was particularly so because as wife and mother she played a supportive role in the family; marriage was "a shared enterprise, a joint undertaking, that in many ways—is akin to a partnership." *Id.* at 229. Therefore, marital assets acquired in the course of that joint undertaking fairly should be included in the estate subject to equitable distribution. Conversely, assets acquired after that enterprise or partnership no longer exists should not be so included.

Accordingly, in certain situations following *Painter,* we relied on dates other than the filing of the complaint, in which the irretrievable breakdown could be readily pinpointed: *DiGiacomo v. DiGiacomo,* 80 *N.J.* 155 (1979); *Carlsen v. Carlsen,* 72 *N.J.* 363 (1977); and *Smith v. Smith,* 72 *N.J.* 350 (1977).

As we stated in *Brandenburg:*

In the absence of a qualifying separation agreement, the date a complaint [for divorce] is filed will fix the termination date of a marriage for purposes of equitable distribution. If the parties have entered into a written separation agreement accompanied by actual physical separation, the date of the agreement will terminate the period of acquisition of distributable assets. If the parties have separated in fact and divided their property pursuant to an oral agreement, assets acquired afterwards are not eligible for equitable distribution. [83 *N.J.* at 209–10 (footnote omitted)]

Applying those principles to this case, we conclude that both the trial court and the Appellate Division erred and that the terminal date is the date the wife amended her complaint for separate maintenance to demand a judgment of divorce.

The facts in this case do not come within the exceptions to the *Painter* rule permitted in *DiGiacomo, Carlsen,* or *Smith.* In those cases, there was an actual physical separation, together with an event that clearly indicated that both parties had agreed that the marriage was completely and finally dissolved. In *Smith* and *Carlsen,* there was a consensual written separation agreement, including support or property settlement provisions. In *DiGiacomo,* there was an oral agreement and an actual distribution of marital assets. In this case, there are no such events. There is only a physical separation not accompanied by a written or oral separation agreement, as in *Carlsen, Smith,* and *DiGiacomo,* nor is there any actual distribution of the marital assets.

II.

The Appellate Division held that the terminal date of the marriage was August 26, 1975, the date the husband filed his divorce complaint in Pennsylvania—ultimately dismissed—on the ground of indignities. We disagree.

The *Painter* rule encompasses more than the mere filing of an unmeritorious complaint for divorce. We hold that under the *Painter* rule in order for a divorce complaint to mark the end of the marriage for the purposes of equitable distribution, the complaint must commence a proceeding which culminates in a final judgment for divorce.

In both *Painter* and *Brandenburg,* we held that the filing of a divorce complaint only will be deemed to mark the end of a marriage where the cause culminates in a divorce. In *Painter,* which concerned an 18-month no-fault divorce, we held that the terminal date of the marriage was not the date the 18-month period of separation began, but the date the complaint was filed. We reaffirmed this position in *Brandenburg,* 83 *N.J.* at 207–08, where we explained that a spouse who was unable to come within one of the exceptions to the *Painter* rule suffered no great hardship since the same result could be obtained by filing a no-fault divorce complaint 18 months after separation. *Id.* In both cases, we specifically refrained from holding the terminal date was the commencement of the 18-month separation period, but held that the parties had to wait 18 months until they had a valid cause of action for divorce.

A rule that allows one spouse to file an unmeritorious divorce complaint unilaterally and thereby to terminate the other spouse's claim to marital assets is manifestly unfair. By adhering to the rule that only a valid divorce complaint that culminates in a divorce is sufficient to terminate a marriage for purposes of equitable distribution, we significantly reduce the possibility for injustice and ensure that the Legislature's intent is not thwarted. We note in passing that in applying the *Painter* rule, in the circumstances of a complaint and subsequent cross-complaint, if the matter proceeds to judgment on the cross-complaint without objection by the plaintiff, a court could realistically evaluate the first complaint as one that "culminates in a divorce."

Further, an event that marks the end of a marriage for the purpose of equitable distribution should reflect an unconditional intent to end the marriage. The mere filing of a spurious complaint does not signify such unconditional intent. This is evident here, where after the husband's two frivolous complaints for divorce were dismissed, he did not seek a divorce in New Jersey for four years. In fact, only after his wife filed her

complaint for divorce in 1979, did the husband counterclaim for a divorce.

Hence, it is reasonable to assume here that the husband's divorce complaints were filed not to end the marriage but to terminate his wife's right to assets acquired after his desertion. Under the Appellate Division's opinion, it is legally possible for a spouse, by filing a frivolous claim, to circumvent the Legislature's intent and deprive his or her spouse of the protection intended to continue during their marriage under *N.J.S.A.* 2A:34–23. By limiting the *Painter* rule to valid divorce complaints that culminate in a divorce judgment, this possibility is substantially avoided. We believe that allowing the mere filing of a divorce complaint to terminate a marriage for the purpose of equitable distribution would encourage the filing of frivolous and in some cases even fraudulent complaints, not only in New Jersey but also in other jurisdictions.

We therefore disagree with the Appellate Division rationale that the filing of the Pennsylvania complaint marked the end of the marriage because the parties "ceased to contribute as a team to common marital goals." This reasoning is equally applicable, of course, to situations in which one spouse merely leaves the marital home. We have consistently held that "mere physical separation alone is an insufficient indication that a marriage is effectively at an end." *Brandenburg,* 83 *N.J.* at 207.

More importantly, the Appellate Division's opinion does not indicate the difference between the rules governing the eligibility of assets that qualify for distribution and the rules prescribing their manner of distribution. The *Painter* rule applies to the former, that is, to the determination of which assets are eligible for distribution. Only after making that initial determination can the trial court decide "how such allocation can most equitably be made." *Rothman v. Rothman,* 65 *N.J.* 219, 232 (1974). In the latter process of distribution the court must take into account the contributions of each spouse to the acquisition of the marital property, including any contribution of a spouse

as homemaker. *Brandenburg,* 83 *N.J.* at 210. In undertaking this distribution, "the trial court should consider the effect of separation on the respective contributions of the parties to the further acquisition of marital property." *Id.* Stated differently, when it comes to distributing the assets, the trial court can properly consider the effect of a deteriorating relationship (including a separation) upon the acquisition of marital assets. Accordingly, the trial court has the opportunity to adjust any inequities that may arise from the application of the *Painter* rule.

There are also very practical and sensible reasons why the trial court should not treat the unilateral filing of a spurious complaint as marking the end of the marriage for equitable distribution purposes. To do so would involve the court in a consideration of a myriad of issues such as the reason for the filing of the complaint, the reason for its dismissal, and the relationship of the parties after its dismissal. In short, it would involve trial courts in exactly the type of judicial inquiry that would be required if we deemed the date of separation or the date of desertion by one party to be the terminal date. We adopted the *Painter* rule to avoid the necessity of the court and the parties spending inordinate amounts of time and money in seeking the ever-elusive date when their marriage truly ended.

## III.

We do agree, however, with the Appellate Division's majority opinion insofar as it reversed the trial court's decision that the terminal date of the marriage occurred when the parties separated in 1974. The mere physical separation of the parties is an unworkable determinant for pinpointing the terminal date of a marriage for purposes of equitable distribution, as it would lead to a "[j]udicial inquiry into the circumstances of a separation [and] would introduce all the difficulties we have consistently sought to avoid." *Brandenburg,* 83 *N.J.* at 207.

We also concur with the Appellate Division that the filing of a complaint for separate maintenance does not terminate the acquisition period for purposes of equitable distribution.

Usually, a wife files a separate maintenance action when (1) her husband has abandoned her and the children without justifiable cause, (2) where her husband refuses to maintain and provide for her and the children, (3) where she does not want a divorce, or (4) where her cause of action for divorce has not yet accrued. [G. Skoloff, *New Jersey Family Law Practice* 215 (3d ed. 1976)]

Thus, the filing of a complaint for separate maintenance does not necessarily signify a desire by either party for a divorce. Rather, it signifies a spouse's need for support. Accordingly, characterizing an action taken by a spouse to secure needed support as a sign that the marriage has dissolved could force a dependent spouse to refuse needed support in order to demonstrate that the separation was not final. *Brandenburg,* 83 *N.J.* at 209.

As stated above, in many cases where a complaint for separate maintenance is filed, it is because a cause of action for divorce has not accrued, *e.g.,* the 18-month separation or 12-month desertion period has not run. We have already discussed, *supra* at 221–222, the manifest unfairness of supporting a rule that holds that the marriage is dead for purposes of equitable distribution but alive with respect to prohibiting a divorce of the parties.

In addition, holding that a marital partnership ends on the date a complaint for separate maintenance is filed further strains the literal construction of the statute that the terminal date of the marriage should be the date the judgment of divorce is entered. Quite often, a complaint for separate maintenance is filed months, even years, before the marriage is ultimately dissolved by law. Indeed, that is precisely the case here. By deeming the divorce complaint, rather than the complaint for separate maintenance, as the terminal document, the acquisition period ends at a time closer to the date the marriage is legally dissolved. Such termination date likewise avoids the judicial inquiry this Court sought to prevent by our adoption of the *Painter* rule.

## IV.

In conclusion, we reaffirm our decision in *Painter* and hold that for purposes of the equitable distribution of marital assets, a marriage is deemed to end on the day a valid complaint for divorce is filed that commences a proceeding culminating in a final judgment of divorce. Mere physical separation of the parties, unmeritorious complaints for divorce, and complaints for separate maintenance will not be deemed to terminate a marriage. The *Painter* rule has, of course, the exceptions previously described.

In the case before us, the terminal date is the day the wife amended her complaint to demand a judgment of divorce. Accordingly, the judgment of the Appellate Division is reversed and the matter remanded to the trial court for further proceedings consistent with this opinion.

*For reversal and remandment* —Chief Justice WILENTZ and Justices CLIFFORD, SCHREIBER, HANDLER, POLLOCK, O'HERN and GARIBALDI—7.

*For affirmance* —None.