**FELIPE N. FUENTES, Plaintiff**
**v.**
**AYRES FUENTES, Defendant**

Fam. No. D89/1995

Territorial Court of the Virgin Islands

Division of St. Croix

August 5, 1999

George W. Cannon, Jr., St. Croix, U.S.V.I., *for the Plaintiff*

H. A. Curt Otto, St. Croix, U.S.V.I., *for the Defendant*

STEELE, *Judge*

## MEMORANDUM OPINION

Two issues were expressly reserved by this Court in its previous memorandum opinion entitled *Fuentes v. Fuentes*, 38 V.I. 29 (Terr. Ct. 1997). Specifically, the Court had chosen to reserve the issues involving the equitable distribution of the Plaintiff's pension plan and the Defendant's request for permanent alimony. This deferment was to last until such time as pension benefits were actually distributed to the Plaintiff. As the Plaintiff is now retired and is indeed receiving said benefits, the Court finds that the remaining two issues are ripe for determination.

The importance of this opinion is recognized by the Court. A definite need exists in the Territory to resolve the confusion which surrounds the question of ownership of pension plans after a divorce. It is therefore the intent of this Court, through this opinion, to bring to an end any such confusion. In the process of accomplishing this task, the Court shall provide the means for calculating the distribution of the Plaintiff's pension plan and address the request that permanent alimony be awarded to the Defendant.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

An extensive factual background of this matter has previously

been detailed by the Court.[1] As such, this opinion shall only discuss those facts which are deemed pertinent to the issues being decided on this date.

The Plaintiff, Felipe N. Fuentes, and the Defendant, Ayres Fuentes, were wed on August 28, 1977. Although they separated from one another sometime in January of 1990, the Plaintiff continued to extend some monetary assistance to the Defendant after this separation. On May 1, 1995, the Plaintiff filed a divorce complaint, which ultimately led to a divorce decree being entered into by this Court on January 3, 1996. Nevertheless, four issues remained unresolved, and were subsequently addressed by this Court in *Fuentes v. Fuentes*, 38 V.I. 29 (Terr. Ct. 1997). In that opinion, the Court awarded the Defendant a seven year life estate in the marital homestead,[2] determined that the Plaintiff's pension plan was marital property, and denied Defendant's request for attorney fees. However, the issues concerning the Defendant's request for permanent alimony and the equitable distribution of the pension plan were expressly reserved by this Court for a future hearing.

It is uncontroverted that the Plaintiff was employed with the Government of the Virgin Islands during his entire marriage to the Defendant. As a government employee, Virgin Islands law mandated that the Plaintiff be a member of the Government Employee Retirement System, hereinafter referred to as "GERS." Furthermore, this mandatory retirement system required its member employees to contribute a certain percentage of their compensation to assist in the financing of the system. Thus, a portion of the Plaintiff's salary was automatically subtracted from his paycheck to support this pension plan.

The Plaintiff retired from the Water & Power Authority on March 31, 1998, causing his retirement annuity to vest the following day. Upon his retirement, the Plaintiff had completed thirty and three-

---

[1] Reference is made to the Court's prior opinion, *Fuentes v. Fuentes*, 38 V.I. 29 (Terr. Ct. 1997).

[2] A seven year term life estate was awarded the Defendant in the homestead located at 145 Sion Farm, St. Croix, with the Plaintiff receiving the reversionary interest in the property. In awarding this life estate, the Court took into consideration both the Plaintiff's admitted infidelity and the fact that the Defendant received all proceeds from the sale of the home located at M. Lipellier, LBJ, St. Croix.

fourths (30¾) years of service as a government employee. According to a July 1, 1998 GERS document, an initial lump sum retirement payment of $1,892.99 was to be paid the Plaintiff. This payment, which represented benefits from April of 1998 through June 15, 1998, was to have been for $8,586.28. However, not all of the Plaintiff's years of employed service with the government were credited. Therefore, in order to receive credit for this service time, the Plaintiff contributed $6,393.29 to the retirement system. Along with this contribution, an additional $300.00 was subtracted from the initial payment to repay a prior personal loan. Finally, the GERS document stated that the Plaintiff would receive regular semi-monthly checks in the amount of $1,617.66, less deductions for personal loans, health insurance and taxes.

## II. DISCUSSION

In the prior opinion in this matter, the Court expressly reserved the issues of alimony and the equitable distribution of the Plaintiff's pension for a future hearing. It had been reasoned that a determination for each of these issues had to await the actual distribution of pension benefits to the employee spouse. With the retirement of the Plaintiff and the disbursement of these proceeds having begun, the Court shall now conclude the remaining issues.

This Court finds that it possesses jurisdiction to entertain both of these matters pursuant to 16 V.I.C. § 109.[3] The issue concerning the pension plan shall be addressed first, as there appears to still exist some debate as to whether this form of property actually constitutes marital property. In affirming that this property is indeed marital, the Court shall provide a formula to calculate the distri-

---

[3] The pertinent portion of 16 V.I.C. § 109 which grants jurisdiction to the Court states that:

Whenever a marriage is declared void or dissolved the court may, without regard to any determination that the breakdown of the marriage was the fault of one party or the other, further decree:

(3) for the recovery for a party determined to be in need thereof an amount of money in gross or in installments, as may be necessary for the support and maintenance of such party;

(4) for the delivery to the wife of her personal property in the possession or control of the husband at the time of giving the judgment; . . .

V.I. Code Ann. tit. 16, § 109 (1996).

bution of the pension amongst the spouses. Lastly, the Court will weigh the overall circumstances of each party in determining whether to award permanent alimony to the Defendant.

## A. Pension Plan

As stated earlier, Plaintiff is a retiree of the Water & Power Authority. As such, he is entitled to receive retirement benefits in the form of semi-monthly installments from GERS for the remainder of his life. V.I. Code Ann. tit. 3, § 723 (1995).[4] The type of retirement plan the government provides its employees is a "defined benefit plan." In this type of plan, the benefits to be disbursed are determined without reference to contributions and are instead based on factors such as years of service and compensation received. *Barlow v. Barlow*, 447 S.E.2d 464 (N.C.App. 1994); *See* V.I. Code Ann. tit. 3, §§ 702(o) and 706 (1995).

## 1. Marital Property

The Court has previously held in this matter that a pension plan is marital property to the extent it was earned during the marriage. Regardless of this holding however, the Plaintiff treats this current proceeding as yet another opportunity to convince the Court to the contrary. He apparently assumes that by reserving the division of the pension plan for a future date, the Court's decision as to the status of this plan necessarily remained open for future argument. This assumption however, is incorrect.

In ascertaining whether the Court had unequivocally ruled on the pension plan's status, it is imperative that the language utilized in the first *Fuentes* opinion be revisited. A review of the prior opinion reveals this aspect of the pension issue to have been extensively discussed by the Court. After thoroughly examining how other jurisdictions treated retirement benefits in divorce matters, the Court held that:

---

[4] It is important to note that the Employee Retirement Income Security Program (also known as ERISA) will not apply to the GERS pension plan, as this plan is excluded from ERISA coverage pursuant to 29 U.S.C. § 1003(b)(1) (West 1999). The term "governmental plan" is defined at 29 U.S.C. § 1002(32) (West 1999) and is made applicable to the Virgin Islands pursuant to 29 U.S.C. § 1003(10) (West 1999).

[d]rawing upon the tremendous statutory and case law of other jurisdictions holding pension funds as marital property, we believe, in the Virgin Islands, that a pension fund is also marital personal property, subject to claim by the other spouse upon divorce. *Having answered the question* of whether a pension plan is marital property, to the extent earned during marriage, we now must determine to what percentage or share of the benefits defendant is entitled.

*Fuentes*, 38 V.I. at 40. (emphasis ours).

It is quite clear from the language just quoted, that the Court found the portion of the Plaintiff's pension plan earned during the marriage to be indeed marital personal property. From this determination, the Court next turned its attention to distributing the plan between the parties. Upon contemplating the two different methods utilized by other jurisdictions to distribute such funds, it was concluded that the deferred distribution method was best suited to the factual circumstances of this case.[5] However, this method required that the employee spouse actually begin receiving retirement benefits before the nonemployee spouse's share could be calculated. Therefore, the Court reserved disposition of the Plaintiff's pension plan for a future hearing.

The Order issued in conjunction with the first *Fuentes* memorandum opinion reserved the determination of the parties' respective interests in the Plaintiff's pension plan until such time as the Court obtained competent and sufficient evidence regarding the provisions of the plan. Furthermore, this same Order referenced the Court's memorandum opinion as setting forth the reasoning behind the Orders entered. It is therefore the opinion of this Court, that the Plaintiff was placed on full notice that the pension plan, to the extent earned during the marriage, had been found to be personal marital property. As such, the Plaintiff would have either needed to timely submit a motion for reconsideration

---

[5] In fact, the Court actually chose to use a subtle variant of the deferred distribution method. This method, known as the "reserved jurisdiction approach," does not determine the nonowning spouse's percentage interest in the pension at the time of divorce, but instead reserves jurisdiction in the Court to establish this percentage at the time of retirement. Brett R. Turner, *Equitable Distribution of Property* § 6.11 at 352-353 (2d ed. 1994).

or an appeal in order to dispute this finding. Having done neither, the Court finds the Plaintiff's argument in regards to the property status of the pension plan to be untimely submitted, and therefore barred.

Considering the importance of this decision however, the Court shall nevertheless address the Plaintiff's argument so as to fully clarify the Territory's stance on this issue and avoid any possible confusion for the future. In his April 23, 1999 memorandum of law, Plaintiff cites *Hanley v. Hanley*, 26 V.I. 116 (Terr. Ct. 1991) as the only published Virgin Islands case authority on the subject of retirement benefits in divorce matters. Particularly, he states that the initial trial judge viewed the pension as the husband's property and considered it as partial evidence in determining alimony. From the context of his memorandum, Plaintiff seems to insinuate that this case supports his view that retirement plans are the separate property of the employee spouse.

While the *Hanley* decision does touch on the issue of retirement benefits during a divorce, the Court does not share Plaintiff's view of this case. *Hanley* deals with a Court which must speculate on how a trial judge handled a military pension some six years earlier during a divorce proceeding. *Hanley v. Hanley*, 26 V.I. 116, 117-120 (Terr. Ct. 1991). In fact, the Court in *Hanley* concluded that the trial judge treated the pension as the property of the husband based on the parties working assumption at trial that the pension belonged to him. *Id.* at 120.

Most importantly however, the *Hanley* Court did not find that pension plans were separate property. Indeed, the Court stated in dictum that had Ms. Hanley pressed a claim in the divorce action for an ownership interest in the pension, the Court would have been empowered to partition the pension pursuant to 16 V.I.C. § 109(4). *Id.* at 122. This statement alone leads this Court to believe that the Hanley Court would agree that a retirement plan may be considered as marital property under certain circumstances. Regardless however, the Hanley case is not controlling, and does not affect the holding that pension plans, to the extent earned during marriage, are marital personal property. The Plaintiff's most vehement argument concerns the 1986 legislative amendment to 16 V.I.C. § 341. Plaintiff specifically points to the definition of "in-

come" found in subsection (e) of § 341. According to this definition, "income" means ". . . any form of periodic payment to an individual, regardless of source, including, but not limited to, wages, salary, . . . annuity and retirement benefits, . . . and any other payments made. . ." V.I. CODE ANN. tit. 16, § 341 (1996). Plaintiff contends that by the Legislature including retirement benefits in the definition of income, the Court is now statutorily mandated to treat these benefits as the personal income of the retiree for purposes of determining alimony. He reasons that the Court cannot consider these same retirement benefits as marital property. To do so would violate local law and allow the Defendant "two-bites-of-the-apple" from the same pension plan. The Court however, does not entirely concur with this statutory interpretation.

■ It is undisputed by the Court that the Legislature, through this code section, intended that a determination of a person's income for support purposes was to include the retirement benefits being *paid* to this person. However, it is only the retirement benefits paid to that person which are to be considered income. Thus, if an individual was receiving just a percentage of the pension benefits available, then only that percentage received may be included as income. Therefore, the percentage awarded to the spouse as marital property would not be considered as income, and as such, there is no second bite from the proverbial apple. Furthermore, those retirement benefits paid to the nonemployee spouse will become a part of that individual's income, subject to alimony considerations as well. The fact that a pension plan may be marital personal property has no bearing on 16 V.I.C. § 341, and thus does not conflict with this section.

■ It is public policy in the Virgin Islands to promote marriage as a partnership by designating the products born of the marital union as marital property. *Felix v. Felix*, 1998 V.I. Lexis 11 (Terr. Ct. 1998). Regardless of which spouse earned the money that acquired a particular marital asset, both spouses have made contributions to the marriage which entitle them to an interest in the property. *Id.* at 1998 V.I. Lexis 11. Although the *Felix* decision came after the first Fuentes opinion, it is this type of rational which led the Court to

find that a pension plan earned during marriage is marital personal property. The Court agrees with the Plaintiff that 16 V.I.C. § 109 will not allow marital fault to be factored into the disposition of marital personal property. By stating in the earlier opinion that the pension plan would be equitably distributed, the Court did not mean to imply that fault would be a factor in the distribution. The Court simply meant that the pension plan would be disbursed in a just and fair manner.

## 2. Distribution of the Pension Plan

Before the Court discusses the method to be used in calculating the distribution of the pension plan to the nonemployee spouse, the actual length of the marriage between the parties must first be determined. While such a determination would seem to be readily apparent, both parties have provided the Court with very different figures. The Plaintiff has asserted that the parties marriage lasted approximately twelve and one-half (12½) years, having ended when they separated in January of 1990. On the other hand, the proposed distribution formula presented by the Defendant lists eighteen and one-fourth (18¼) years of marriage in the equation. In arriving at this number, she apparently considered the marriage to have ended on the date the divorce decree was entered.

## a. Termination Date of Marriage

The Virgin Islands Code is silent as to when the specific termination date occurs in regards to the acquisition of marital property. In a number of states, this termination date, also known as the date of classification, is established by statute. Brett R. Turner, *Equitable Distribution of Property* § 5.12 at 182-183 (2d ed. 1994). However, the statutes in these jurisdictions follow no general rule. Rather, they have adopted a variety of different dates, including the date of divorce, the date of the divorce hearing, the date of filing the divorce complaint, the date of separation, and the date of a legal separation decree. Turner, *supra*, § 5.12 at 183, 185-186. As such, both figures presented to the Court are plausible. It is therefore the duty of the Court to select a date of classification which it feels best suits the residents of the Virgin Islands.

After examining each of the different possible dates of classification listed above, the Court finds that the date of the divorce

decree should apply to the Virgin Islands, unless an earlier legal separation decree has been issued. In contemplating the other dates, the Court finds the date of the divorce hearing to be too uncertain. It is not unusual for the Court to hear a divorce case on different days which span several months. Furthermore, a possibility exists that a temporary reconciliation between the parties could occur during the interim of these hearing dates, confusing the issue even more.

As for the filing of the divorce complaint, the Court finds that this date is subject to manipulation. Although this date would be certain, it puts the power to select the termination date in the hands of the party filing for divorce. *Friedman v. Friedman*, 384 S.E.2d 641, 642 (Ga. 1989) (overruled in part by *Duckworth v. State*, 492 S.E.2d 201 (Ga. 1997), holding that prior inconsistent statements are admissible, regardless as to whether the witness admits that he or she made the pre-trial statement). This would allow a party to file for divorce on the eve of a large acquisition so as to specifically defeat the other spouse's claim. *Id.* at 642. The Court acknowledges its statement in the first *Fuentes* opinion that the marriage ceased when the plaintiff filed a divorce complaint on May 1, 1995. *Fuentes*, 38 V.I. at 30. However, the exact termination date of the marriage was not an issue at the time of the previous opinion, as the disposition of the retirement plan was reserved for a future hearing. Therefore, the Court may rectify its earlier misstatement, and find that the date of the divorce decree marks the end of the parties' marriage.

Turning to the date of separation, the Court notes the difficulty of accurately ascertaining this exact date. It is an unsatisfactory date of classification because it carries with it a considerable amount of uncertainty and is subject to manipulation. "Friedman", 384 S.E.2d at 642. The uncertainty of when the separation actually occurred could give rise to otherwise unnecessary litigation. *Id.* at 642. Furthermore, the mere physical separation of the parties is not necessarily a sufficient indication that the marriage is effectively at an end. *Brandenburg v. Brandenburg*, 416 A.2d 327, 332 (N.J. 1980). As a result, a case-by-case inquiry would be necessary to determine when the marriage disintegrated. Trial Courts would be embroiled in analyzing the entire course of events during the

period of the alleged separation, with any contact between the spouses requiring scrutiny. To complicate matters, evidence of the separation would mainly come from the parties themselves, creating persistent credibility and corroboration problems. *Id.* at 332.

■ In determining that the earlier of the two decrees should be the date of classification, the Court weighed heavily the advantages and disadvantages of such a decision. The Court realizes that the marital partnership between the spouses will most likely have ended prior to the granting of the divorce decree. Brett R. Turner, *Equitable Distribution of Property* § 5.12 at 184 (2d ed. 1994). In fact, many parties live and function separately from one another for some time before the Court grants the divorce. Turner, § 5.12 at 184. Nonetheless, the Court feels that the certainty which necessarily accompanies a decree simply outweighs this disadvantage. Not only is the date of a divorce decree unlikely to move about, it is a date that neither party has the power to select at will. *Friedman,* 384 S.E.2d at 642. Furthermore, this date would promote the judicial efficiency of the Court, avoiding any unnecessary litigation surrounding the actual date the parties ended their marital partnership.

As there exists nothing in the record to indicate that a legal separation decree was ever entered into, the Court finds the January 3, 1996 divorce decree date to be the termination date of the parties' marriage. Therefore, for the purpose of calculating the Defendant's percentage of the pension plan, the parties were married eighteen and one-fourth (18¼) years.

### b. Method of Calculation

Having determined the length of the parties marriage, the Court must now provide a formula to divide the marital portion of the pension plan. In arriving at this determination, the fact that the Plaintiff retired more than two years after his divorce from the Defendant must also be considered. A decision will need to be reached as to whether any post-divorce enhancements to the pension plan should be included in this equation.

It is indisputable that post-divorce earnings are separate property. *In Re Marriage of Hunt,* 909 P.2d 525, 532 (Colo. 1995). Similarly, property acquired after the dissolution of the marriage is immu-

nized from division. However, the jurisdictions are split on the issue as to whether post-divorce pension enhancements are to be considered separate or marital property. This split in authority consists of two general lines of decisions. The first of these lines has adopted the "bright line" rule formula, whereas the other has approved the use of the "time rule" formula. *Id.* at 532. After considerable contemplation, the Court finds the "time rule" formula to best suit the needs of the Virgin Islands.

The "bright line" rule equates post-dissolution pension enhancements with post-dissolution earnings. *In Re Marriage of Hunt*, 909 P.2d at 533. To implement this method of calculation would require the Court to attempt to parse out the marital portion of the post-dissolution enhancement from that which is deemed separate. Simply stated, the Court would need to determine that portion of the post-dissolution plan which is solely attributable to the efforts of the employee spouse and not related to the marriage whatsoever. *Id.* at 535. These sort of distinctions pose substantial burdens upon the Court. *See* Turner, § 6.10 at 154 and 158 (2d ed. 1997 Supp.).

The "time rule" formula acknowledges that post-dissolution pension enhancements defy easy categorization. *In Re Marriage of Hunt*, 909 P.2d at 534. This rule therefore applies all retirement benefits to the calculation, regardless of when they are earned. *See* Turner, § 6.10 at 155 (2d ed. 1997 Supp.). By preceding in this manner, the "time rule" allows for simplicity, while avoiding the need to draw messy distinctions between different types of post-divorce increases. Turner, § 6.10 at 154 (2d ed. 1997 Supp.). Only if the trial court were to decide to distribute the pension at the time of the divorce by utilizing the present value method,[6] would post-dissolution enhancements to a pension not be considered marital property. *See In Re Marriage of Hunt*, 909 P.2d at 534.

It is typical for there to be a commingling of effort amongst the spouses during and even after the marriage which together enhance the value of the future pension benefits. *In Re Marriage of Hunt*, 909 P.2d at 534. The ability of an employee spouse to enhance

---

[6] A description of the present value method is provided for in the Court's first *Fuentes* opinion. *Fuentes v. Fuentes*, 38 V.I. 29, 41 (Terr. Ct. 1997).

the value of the pension after the marriage frequently builds on foundation work and efforts which were undertaken during the marriage. *Id.* at 534; *See Rothbart v. Rothbart*, 677 A.2d 151, 154 (N.H. 1996); *See Sertic v. Sertic*, 901 P.2d 148, 150 (Nev. 1995). This theoretical premise is referred to as the "marital foundation" theory, and is the underlying basis of the "time rule" formula. *In Re Marriage of Hunt*, 909 P.2d at 532.

Although it is true that post-dissolution enhancements may sometimes be related to effort, they must be treated identically to passive increases so as to equitably apportion the risks of delay which are inherent in the deferred distribution and reserve juris-diction methods for distribution. *In Re Marriage of Hunt*, 909 P.2d at 534. In each of these methods, the nonemployee spouse must wait to receive his or her share of the pension. Consequently, receipt of such benefits is contingent upon a number of variables, most of which are in the control of the employee spouse. *Id.* at 536.

In addition, the nonemployee spouse's separate interest in the pension fund remains combined with that of the employee spouse's interest until retirement. *In Re Marriage of Benson*, 545 N.W.2d 252, 257 (Iowa 1996) (quoting Brown, 39 Baylor L.Rev. at 1188-89). As such, the plan administrator of the pension has the ability from the date of dissolution until the date of retirement to invest this separate property of the nonemployee spouse. This added investment value increases the fund's earning power, which is used to create the future defined benefit to the employee. If the nonemployee spouse's interest is calculated only on that portion of the pension frozen as of the date of dissolution, it will allow the employee spouse to reap the benefits of the earnings attributable to the nonemployee spouse's separate interest in the fund. *Id.* at 257.

Therefore, the nonemployee spouse should be compensated for the risk of forfeiture, delay in receipt, and lack of control over the timing of receipt of benefits. *In Re Marriage of Hunt*, 909 P.2d at 537. An appropriate means of compensation is to permit the nonemployee spouse to share in all post-dissolution enhance-ments. *Id.* at 537; *See In Re Marriage of Benson*, 545 N.W.2d at 257. This serves to achieve a balance between the employee's unilateral control in decision making and the nonemployee's interest in the pension. Furthermore, the employee spouse may benefit from this

98

approach as well, as it will protect him or her should the pension decrease after the marriage has ended. *In Re Marriage of Hunt*, 909 P.2d at 537.

██ In this particular instance, the Plaintiff's pension benefits are determined in part by averaging the three highest years of compensation within the last ten years of service. *See* V.I. CODE ANN. tit. 3, § 702(o) (1995). The Court is uninformed as to whether either of the Plaintiff's last two years of compensation were included in the final GERS retirement benefit calculation. Based on the Court's decision today however, this information is not relevant. It is expressly held by the Court that post-dissolution increases in pension benefits are marital property when a pension plan is divided under either the deferred distribution or reserve jurisdiction method.

The "time rule" formula includes a marital fraction, also known as a coverture fraction, which serves to determine the marital interest in the pension. *In Re Marriage of Hunt*, 909 P.2d at 531. This fraction consists of a numerator representing the number of years that the employee spouse has earned towards the pension during the marriage, over a denominator representing the number of years of total service towards the pension. Once a percentage has been determined from the fraction, this amount is multiplied times the monthly retirement benefit and then multiplied by one-half to arrive at the marital portion of the pension benefits. Thus, the "time rule" formula is as follows:

$$\frac{\text{Years of Service During Marriage}}{\text{Years of Total Service}} \times \text{Monthly Benefit (after taxes)} \times \tfrac{1}{2}$$

*Id.* at 531-532.

Applying the above formula to the facts of this current case, the numerator of the coverture fraction is 18.25, while the denominator is 30.75. This fraction is then multiplied by the monthly benefit received by the Plaintiff, minus only the taxes which are withheld. After taxes, the monthly benefit amount of the pension is

$3,135.32.[7] When multiplying the coverture fraction with the monthly benefit, a figure of 1,860.81 results.[8] This figure is then multiplied by one-half, which represents the marital portion of the figure. A final computation of $930.41 is achieved, which figure reveals the Defendant's separate monthly property interest in the Plaintiff's retirement benefits. Displayed in the above formula, this equation looks as follows:

$$\frac{18.25}{30.75} \quad \times \quad \$3,135.32 \quad \times \quad \tfrac{1}{2} \ = \ \$930.41$$

■ As GERS pays the Plaintiff retirement benefits on a semi-monthly basis, the Court finds that the Defendant should receive payments of her separate property interest in the pension fund in the same fashion. Therefore, the Court finds that the Defendant is to receive retirement benefits from the Plaintiff's pension of $465.21 semi-monthly. Furthermore, the Plaintiff cannot seek a withdrawal of his contributions to the pension without first receiving approval from the Court.

## 3. Retroactive Payment

Defendant first seeks to receive 29.675 percent of the $8,586.28 which she claims was initially owed the Plaintiff by GERS. The Defendant arrives at this percentile by multiplying the coverture fraction[9] by one-half, with the one-half representing the marital portion. She claims that GERS reduced this amount of $8,586.28 to $1,892.99 because of prior loans taken by the Plaintiff. However, this assumption by the Defendant is incorrect.

Only $300.00 was removed from the $8,586.28 amount due to a loan repayment. The remaining $6,393.29 was contributed to the retirement system so that certain non-credited service with the government could be credited. As this contribution benefitted the

---

[7] The Court arrived at this monthly benefit figure by taking the semi-monthly amount paid to the Plaintiff, which is $1,617.66, multiplying this amount times two, and then subtracting from this total $100.00, which represents the taxes which are withheld for the month.

[8] In computing this equation, the Court rounded the figures to the nearest cent.

[9] The Defendant utilized the same figures in her coverture fraction that the Court has determined in this opinion to be proper.

entire pension plan, the Defendant is not entitled to a percentage of the $6,393.29 reduction. She is entitled however, to have the $300.00 loan repayment added to the $1,892.99 initially paid the Plaintiff, resulting in an amount of $2,192.99. Utilizing the "time rule" formula, the Defendant is therefore entitled to receive $650.77 of the initial GERS payment to the Plaintiff.

As of July 15, 1999, Plaintiff should have received twenty-six (26) semi-monthly retirement payments from GERS. The Court finds that the Defendant is entitled to receive $465.21 from each of these semi-monthly payments. Therefore, the Plaintiff must pay the Defendant $12,095.46 in back payments for the retirement benefits which he has withheld from her. In addition, the legal rate of interest of nine percent[10] shall be added to the $650.77 and $12,095.46 payments owed the Defendant by the Plaintiff. However, the interest on the $12,095.46 must be calculated from the date each separate $465.21 semi-monthly payment was to have been paid.

## B. Permanent Alimony

A broad discretion is bestowed upon the Court when evaluating an application for alimony. *Poe v. Poe*, 7 V.I. 30, 409 F.2d 40 (3d Cir. 1969); *Hamilton v. Hamilton*, 38 V.I. 3, 8 (Terr. Ct. 1996). Implicit in this discretion is the Court's role as a fact-finder to discern the facts and weigh the evidence. *Hamilton*, 38 V.I. at 8. A familiarity exists with the Court as to the parties and their personal and financial circumstances. *Poe*, 7 V.I. at 34, 409 F.2d at 42. In determining whether to award alimony, factors to be considered should include the parties personal income, needs, financial ability, checking account balances, employment, living expenses, and outstanding debts and obligations. *Fuentes*, 38 V.I. at 43.

The Court is mindful that the evidence substantiates a limited employment future for the Defendant due to her medical condition. Furthermore, the Court notes that the Plaintiff will receive some $2,204.91 a month in retirement benefits from GERS. Notwithstanding these findings however, it is the opinion of the

---

[10] The legal rate of interest of nine percent is found in 11 V.I.C. § 951(a).

Court that the Defendant is not entitled to permanent alimony. Defendant will be receiving $930.41 a month in retirement proceeds and currently does not pay for housing. In addition, she is entitled to payments of $650.77 and $12,095.46 from the Plaintiff, with both amounts to include interest. Based on these facts, the Court does not believe the Defendant should receive permanent alimony nor continue to receive the temporary alimony of $300.00.

## III. CONCLUSION

The purpose of this opinion has been to establish in the Territory a means to separate the marital portion of a pension plan when a trial court has determined to distribute such a plan under either the deferred distribution method or the reserve jurisdiction method. Before providing this method of calculation however, the Court rejected the Plaintiff's argument that a pension plan was incapable of being marital property. The Court next determined that the date of the parties divorce decree was to be treated as the specific termination date in regards to the acquisition of marital property.

It was noted that the Plaintiff continued to work for more than two years after the divorce decree was entered into by the Court. As such, it was necessary to determine whether any post-dissolution enhancements to the pension plan should be included when calculating the marital portion of the pension. Review of this issue revealed a split in the jurisdictions as to whether these enhancements should be treated as separate or marital property. After examining this split, the Court held that post-dissolution enhancements are marital property as long as the pension is distributed by either the deferred distribution method or the reserve jurisdiction method.

Upon applying the "time rule" formula to the present case, the Court found the Defendant's semi-monthly interest in the retirement benefit to be $465.21. The Court further found that the Plaintiff had to pay the Defendant $650.77 of the initial GERS retirement payment, plus nine percent interest. An additional $12,095.46 is owed the Defendant by the Plaintiff for past retirement benefits not paid the Defendant. A nine percent interest is placed on this amount as well, however, the interest must be

calculated from the date each separate $465.21 semi-monthly payment was to have been paid. Finally, the Court determined that the Defendant was not entitled to permanent alimony, and ceased the temporary alimony of $300.00 that she had been receiving.

DATED: August 5, 1999