Felipe N. **FUENTES**, Appellant,

v.

Ayres **FUENTES**, Appellee.

No. D.C.CIV.A.1999/156.

District Court, Virgin Islands,
D. St. Croix.

Jan. 21, 2003.

George W. Cannon, St. Croix, VI, for Appellant.

H.A. Curt Otto, St. Croix, VI, for Appellee.

Before: RAYMOND L. FINCH, Chief Judge, District Court of the Virgin Islands; THOMAS K. MOORE, Judge of the District Court of the Virgin Islands; and IVE A. SWAN, Judge of the Territorial Court, Sitting by Designation.

## *MEMORANDUM OPINION*

PER CURIAM.

Felipe Fuentes ("Felipe" or "Appellant") appeals the method used by the Territorial Court in dividing his pension benefits as part of his divorce from Ayres Fuentes ("Ayres" or "Appellee"). The singular issue presented on appeal is:

> Whether the trial court erred in determining that pension benefits accruing up to the date of the final divorce decree constituted marital property subject to equitable distribution, where the couple was separated for six years prior to the divorce.[1]

Unlike the date of separation, which may be subject to dispute under the specific facts of each case, the date of final divorce provides the certainty required for a fair distribution of marital property and prevents unilateral manipulation by either spouse. Therefore, this Court will **AFFIRM** the lower court's ruling defining the term of a marriage in this jurisdiction up to the date of legal dissolution, for the purpose of distribution of marital property.

## I. FACTS AND PROCEDURAL POSTURE

The facts of this case are not in dispute and are adopted from the trial court's opinions in *Fuentes v. Fuentes*, 38 V.I. 29 (Terr.Ct.1997) ("Fuentes I") [Appendix ("App.") at 13–34] and *Fuentes v. Fuentes*, 1999 WL 632829, *6 (Terr.V.I. Aug. 5, 1999) ("*Fuentes II*") [App. at 35–54]. Felipe and Ayres Fuentes were married on August 28, 1977. No children were born of that marriage. It is undisputed that the parties ceased living together sometime in January, 1990. However, Felipe continued, at least for some time, to contribute to Ayres' financial support, and Ayres continued to live undisturbed in their home, which was owned by Felipe prior to the marriage.

On May 1, 1995, appellant initiated an action for divorce. It was undisputed that Felipe had an extramarital affair which led to the breakdown of the marriage.[2] The trial court granted divorce on January 3, 1996 but reserved ruling on other issues, including the distribution of the marital property. After holding hearings on the remaining issues, the court on September 8, 1997 entered a Memorandum Opinion and Order, which provided for certain distribution of property. In that order, the court permitted Ayres to remain in the couple's home, at No.145 Estate Sion Farm, for seven (7) years, after considering Felipe's conduct and Ayres' contributions to the expansion and development of that home during the course of the marriage; Felipe took the remainder, in fee.

---

1. Appellant appears to suggest, during the course of his argument, that the trial court's designation of his pension as marital property is also subject to review here. However, the trial court decided that issue in *Fuentes v. Fuentes*, 38 V.I. 29 (Terr.Ct.1997) ("Fuentes I"). That order is not the subject of this appeal. Therefore, the only issue addressed here is whether the court abused its discretion in designating the divorce decree as the determination date for distribution purposes.

2. The court noted, and the appellant does not dispute, that Felipe admitted to having an affair, although he offered lack of consortium as the prime cause of his infidelity. [App. at 21].

[App. at 21–22]. Additionally, the court determined that a portion of Felipe's pension, earned as part of his 31–year career with the Virgin Islands Water & Power Authority, was marital property subject to distribution. [App. at 23–26]. However, because Felipe's pension benefits had not yet vested, the court reserved distribution of that property until a later date. [App. at 26–29].[3] The court further denied Ayres' request for attorneys fees and permanent alimony.

In *Fuentes II*, decided on August 9, 1999, the court undertook to distribute Felipe's pension, which at that time had vested. In that regard, the court ordered appellant to pay to the appellee $930.41 monthly from his monthly pension of $3,020; he was also ordered to pay Ayres additional amounts for arrearages from an initial lump sum retirement payment, which he received prior to the court hearing. [App. at 16]. The trial court calculated the distribution based on its determination that the marriage had endured for 18.25 years—up to the date of the final divorce decree.[4]

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

This Court has jurisdiction to consider the instant appeal, this being a final civil judgment from the Family Division of the Territorial Court. *See,* V.I. CODE ANN. tit. 4, § 33(1997); Revised Organic Act of 1954 § 23A; *see also,* 16 V.I.C. § 109.

■ The trial court has broad discretion to distribute marital assets in a divorce, and its decisions in that regard are reviewed only for abuse of that discretion. *See, Feddersen v. Feddersen,* 68 F.Supp.2d 585(D.V.I.1999); *see, also, MacAleer v. MacAleer,* 725 A.2d 829, 831 (Pa.Super.1999). Factual determinations may be reversed on appeal only if found to be clearly erroneous. *See, Bloch v. Bloch,* 473 F.2d 1067, 1068–69 (3d Cir.1973).

### B. The Trial Court Did Not Err In Relying On The Date Of The Divorce Decree In Determining The Term Of The Marriage.

Felipe challenges the trial court's determination that Ayres was entitled to share in his pension benefits acquired up to issuance of the final divorce decree, notwithstanding the couple's separation six years earlier. He argues the trial court should have relied on the date of physical separation, rather than the date of divorce, because the marriage had, in fact, long ended.

■ Though not specifically defined in our statutes, "marital property" has been construed to encompass any property which the couple acquired "during the marriage" and which is subject to equitable distribution upon divorce. *See, Felix v. Felix,* 1998 WL 458499, *2 (D.virgin Islands July 21, 1998); *Compare,* 16 V.I.C. § 68 (defining what constitutes "separate property" of spouse, not subject to distribution); *Carlsen v. Carlsen,* 72 N.J. 363,

3. After considering alternative approaches for distribution of vested and non-vested pension benefits, the court adopted the deferred distribution approach, which required full vesting or actual distribution of the pension benefits to Felipe before the marital portion may be distributed.

4. The established period of the marriage is significant because, under the "time-rule" formula employed by the trial court, the appellee's interest in Felipe's pension is determined by dividing the number of years Felipe contributed to his pension plan during the marriage by the years of his total service, multiplying that amount by the monthly retirement benefit, and then multiplying that amount by one-half. [App. 49–50].

371 A.2d 8 (1977). Thus, any property acquired or accrued through the direct or indirect contributions of either party *during the marriage*—regardless of when the benefit from such contributions actually vests—is deemed the joint property of the marital partnership subject to equitable distribution upon divorce. *See,* 16 V.I.C. § 109(4); *see, also,* 56 A.L.R.4th 12 (1987) (assets such as pension benefits, acquired after separation but before divorce, may be deemed marital property where acquired as result of indirect contributions of a spouse during course of the marriage). This is in line with the view of marriage as a partnership or joint venture, whereby both parties collaborate for a common purpose and contribute toward its success. *See, Felix,* 1998 WL 458499, *2; *see, also, Portner v. Portner,* 93 N.J. 215, 460 A.2d 115 (1983). Inherent in the identification of marital property for distribution purposes, therefore, is a determination of the term or duration of the marriage.

Short of a judicially declared dissolution, *see,* 16 V.I.C. § 101 (1997), the Virgin Islands statute has not expressly defined the point at which a marriage ceases for the purpose of identifying the property subject to equitable distribution, nor have our courts expressly dealt with the specific issue presented here. Jurisdictions which have dealt with this issue, however, generally look to objective evidence that the marriage has effectively come to a *final and permanent* end, with no intent of reconciliation. *See,* 27B C.J.S. *Divorce* § 515; *see, also, Brandenburg v. Brandenburg,* 83 N.J. 198, 416 A.2d 327, 333 (1980); 56 A.L.R.4th 12 (1987). Defining the exact moment that the marital relationship has finally ended, however, has proven a more difficult task. In this regard, jurisdictions have adopted one of varied approaches to define the end of a marriage: the date of divorce decree, time of filing the divorce complaint, date of divorce hearing, or the date of separation. *See,* 27B C.J.S. § 516.

This Court rejects appellant's assertion that the trial court abused its discretion in opting for the date of the divorce decree rather than the separation date.

■ Determining the end of a marriage based on the date of physical separation, in the absence of a legal separation as provided by statute, is widely disfavored because of the problems inherent in that approach. *See, e.g., Portner,* 93 N.J. 215, 460 A.2d 115; *Brandenburg,* 83 N.J. 198, 416 A.2d 327; *Markham v. Markham,* 80 Hawai'i 274, 909 P.2d 602 (1996); *Prost v. Greene,* 652 A.2d 621 (D.C.1995); *Painter v. Painter,* 65 N.J. 196, 320 A.2d 484(1974). In *Portner,* the court held that "mere physical separation alone is an insufficient indication that a marriage is effectively at an end," noting the inherent difficulties in proving the intent of the parties and in proving the true date of separation based on the parties' conduct. *See, Portner,* 460 A.2d at 117–18(quoting *Brandenburg,* 83 N.J. 198, 416 A.2d 327); *see, also, Bussell v. Bussell,* 623 P.2d 1221 (Alaska 1981); *compare, Hendry v. Hendry,* 14 V.I. 610 (Terr.Ct.1978) (holding that separation alone was insufficient to show irretrievable breakdown of marriage, for the purpose of divorce, where there was other evidence of a continued marital relationship). That court, therefore, adopted the date of filing of a *valid* divorce complaint to mark the end of a marriage, only where that complaint actually resulted in divorce. *See, Portner,* 460 A.2d at 118. The court noted that this distinction, and the requirement that a divorce be effected, was necessary to guard against manipulation and fraud, through the filing of frivolous complaints aimed at depriving one spouse of assets:

There are also very practical and sensible reasons why the trial court should not treat the unilateral filing of a spurious complaint as marking the end of the marriage for equitable distribution pur-

poses. To do so would involve the court in a consideration of a myriad of issues such as the reason for the filing of the complaint, the reason for its dismissal, and the relationship of the parties after its dismissal. In short, it would involve trial courts in exactly the type of judicial inquiry that would be required if we deemed the date of separation or the date of desertion by one party to be the terminal date. We adopted the *Painter* rule to avoid the necessity of the court and the parties spending inordinate amounts of time and money in seeking the ever-elusive date when their marriage truly ended.

*Id.* at 119 (rejecting the date of filing by one spouse in this instance, where it was evident the initial complaint was filed merely to deprive one spouse of property and not intended to lead to final divorce).

In *Painter,* 320 A.2d at 494–95, decided before *Portner,* the court rejected reliance on the couple's separation for distribution purposes as an "unworkable" rule which could potentially entangle the courts in independent evidentiary escapades to determine the precise point at which the marriage was truly broken. The *Painter* court, therefore, defined the term of a marriage from the point of the marriage ceremony and ending at the filing of the divorce complaint. *See, Painter,* 320 A.2d at 495. However, that court also acknowledged that its definition may not be workable in all cases and may, indeed, give way to the needs of a particular case. *Id.* at 495 n. 7. A similar result followed in *Brandenburg,* where the appellate court reaffirmed the *Painter* rule and found the date of separation an unreliable tool for determining property distribution, noting:

Judicial inquiry into the circumstances of a separation would introduce all the difficulties we have consistently sought to avoid. Case-by-case searches for the elusive point when a marriage disintegrates would be necessary. Trial courts would be embroiled in analyzing the entire course of events during the period of separation. Any contact between the spouses would require scrutiny. Much of the evidence would come from the parties themselves; credibility and corroboration would be persistent problems. Any examination of the nature and meaning of the parties' separation would require extraordinary amounts of judicial time and energy. Because of the character of the evidence which would be involved, the resulting adjudications would be neither reliable nor consistent.

*Brandenburg,* 416 A.2d at 332 (adopting date of complaint); *cf., Berrington v. Berrington,* 534 Pa. 393, 633 A.2d 589 (1993) (relying on separation date).[5]

Courts following *Painter,* however, have expanded its definition of the term of a marriage, acknowledging that reliance on the date of physical separation may well be proper in certain instances, where coupled with a separation agreement, division of marital property, or some other objective evidence that the parties intended to forever sever the marital partnership. *See, e.g.,DiGiacomo v. DiGiacomo,* 80 N.J. 155, 402 A.2d 922 (1979) (actual distribution of property, coupled with oral separation agreement); *Carlsen v. Carlsen,* 72 N.J. 363, 371 A.2d 8 (1977) (separate maintenance agreement provides evidence marriage has ended, when coupled with actual separation); *Smith v. Smith,* 72 N.J. 350,

---

**5.** Contrary to appellant's assertion, *Berrington* does not compel reliance on the date of separation here. There, the court's decision was premised on a statute that expressly provided that property acquired by either spouse after physical separation did not fall within the definition of marital property. *Id.* at 592.

371 A.2d 1 (1977) (noting that a separation agreement is "incontrovertible evidence that the marital enterprise is no longer viable"); *compare, Markham,* 909 P.2d at 615 (holding lower court erred in relying on separation date; final date of divorce governs distribution, although court has discretion to consider equity in distributing post-separation assets); *Prost,* 652 A.2d at 632 n. 27(final divorce date governed calculation of spouse's share of pension benefits); UNIF. MARITAL PROPERTY ACT § 1(8), 9A U.L.A. 112 (1998) (adopting the date of divorce decree). Clearly, jurisdictions vary in their approach and may each prefer different methods for assessing the duration of a marriage. However, what becomes equally clear is the recognition of the elastic nature of this analysis which must conform to the facts and the equity of the case.

■ Here, the trial court carefully considered all of the options and outlined its reasons for adopting the approach it did. In that regard, the court noted that the date of the divorce decree was most appropriate here for several reasons: it provided certainty in determining the true end of the marital relationship, could not be manipulated or changed at will by either party to the detriment of the other, was not subject to dispute, and would not require separate proceedings. *See, Fuentes,* 1999 WL 632829,*6. In rejecting reliance on the date of separation, the trial court aptly noted:

> [The separation date] is an unsatisfactory date of classification because it carries with it a considerable amount of uncertainty and is subject to manipulation. The uncertainty of when the separation actually occurred could give rise to otherwise unnecessary litigation. Furthermore, the mere physical separa-

tion of the parties is not necessarily a sufficient indication that the marriage is effectively at an end.... The Court realizes that the marital partnership between the spouses will most likely have ended prior to the granting of the divorce decree. In fact, many parties live and function separately from one another for some time before the Court grants the divorce. Nonetheless, the Court feels that the certainty which necessarily accompanies a (divorce) decree simply outweighs this disadvantage. Not only is the date of a divorce decree unlikely to move about, it is a date that neither party has the power to select at will.

*Id.* (internal citations omitted). As the trial court also noted, a separation marked by periods of "temporary reconciliation" between a couple could result in added difficulty in proving the term of a marriage and could potentially wreak havoc on the court's attempts to pinpoint the actual period of separation. *See, id.*

For similar reasons, this Court is equally convinced that the date of a divorce complaint also presents unwarranted uncertainty and opens the process to manipulation. As the trial court explained in rejecting this approach—and as the *Portner* court noted in qualifying the necessity for a "valid" complaint—reliance on the date of the divorce complaint would essentially place the power to limit the scope of property subject to distribution in the hands of one party to the marriage and "would allow a party to file for divorce on the eve of a large acquisition so as to specifically defeat the other spouse's claim." *Id.; cf., Brandenburg, supra* (relying on date of complaint).[6] Ultimately, the trial court defined the term of a mar-

---

**6.** This Court also finds no merit in appellant's assertion that the lower court was compelled to follow, at minimum, the approach adopted in *Brandenburg,* where it relied in part on that court's reasoning for rejecting the separation date.

riage up to its literal end—that is, until ended by divorce decree as provided by statute.

It is evident the trial court carefully considered the available approaches and weighed the difficulties inherent in each, before ultimately settling on the date of the divorce decree. In the absence of local statute or other mandatory authority to the contrary, the court did not abuse its discretion in adopting a reasonable common law approach [7] from among several permissible approaches for determining how the pension benefits should be distributed. *See, Feddersen,* 68 F.Supp.2d at 596(citing *Simmons v. Simmons,* 723 A.2d 221, 222–23 (Pa.Super.1998) (An abuse of discretion "requires proof of more than a mere error in judgment, but rather evidence that the law was misapplied or overridden, or that the judgment was manifestly unreasonable or based on bias, ill will, prejudice, or partiality.")).

## III. CONCLUSION

For the foregoing reasons, this Court will **AFFIRM** the trial court's determination defining the term of a marriage in the Virgin Islands up to the point of legal dissolution, such that any marital property acquired or accrued up to the issuance of a final divorce decree is subject to equitable distribution.

### *ORDER*

For the reasons stated in an accompanying Memorandum Opinion of even date, it is hereby

**ORDERED** that the trial court's determination that a marriage in the Virgin

Islands endures up to the issuance of a final divorce decree is **AFFIRMED**.

---

7. Title 1, section 4 of the Virgin Islands Code provides:

The rules of the common law, as expressed in the restatements of the law approved by the American Law Institute, and to the extent not so expressed, as generally understood and applied in the United States, shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary. 1 V.I.C. § 4. Local law encompasses not only statutes, but also Virgin Islands case law. *See, Moore v. A.H. Riise Gift Shops,* 659 F.Supp. 1417, 1423 (D.Vi.1987) (citing *Skeoch v. Ottley,* 377 F.2d 804, 810 (3d Cir.1967)).