885 A.2d 470 (2005)
381 N.J. Super. 199
Glenn R. ROBERTSON, Plaintiff-Appellant,
v.
Camille M. ROBERTSON, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued September 20, 2005.
Decided November 9, 2005.
*472 Edward S. Snyder argued the cause for appellant (Weinstein Snyder Lindemann Sarno attorneys; Mr. Snyder of counsel and on the brief with Crystal G. Surface).
James P. Yudes, Springfield, argued the cause for respondent (James P. Yudes attorney; Kevin M. Mazza and Jason L. Rogers on the brief).
Before Judges SKILLMAN, PAYNE and FRANCIS.
The opinion of the court was delivered by
PAYNE, J.A.D.
In this matrimonial matter, the husband, Glenn S. Robertson, appeals from certain provisions of a dual judgment of divorce entered by a judge of the Family Part following trial.
The Robertsons were married on April 22, 1989 and separated on July 31, 2001. The husband's complaint was filed on September 20, 2001, and a dual final judgment of divorce was entered on November 5, 2003 that memorialized the terms of a written opinion issued on August 30, 2003.[1]
At the time of trial each spouse, born in 1964, was thirty-nine years of age. The parties have three children, Camille, age eleven at the commencement of trial, Nolan, age eight and Luke, age five. Joint custody of the children was awarded, with the mother, Camille M. Robertson, having primary residential custody in the marital home, which in accordance with the court's order, she is entitled to keep until the youngest child graduates from high school.
On appeal, the husband challenges (1) the equitable distribution of stock options awarded to him as a signing and retention bonus by his present employer on September 17, 2001  three days before the complaint for divorce was filed; (2) the award of permanent alimony to the wife; and (3) the requirement that he pay the full remaining $25,000 to $30,000 balance of a home equity loan with no credit for the payment at the time that the house is sold. We affirm in part and reverse in part.

I.
We first address the issue of the equitable distribution of stock options given in connection with the husband's employment with USA Interactive, which commenced on September 17, 2001, three days before the complaint for divorce was filed. The Family Part judge ordered that the wife be awarded a one-half interest in any stock options granted to the husband before the *473 filing of the complaint. The options at issue, granted at the start of the employment, contained a provision that they would vest in one-fourth increments each year over the next four years on the anniversary date of employment.
On appeal, the husband contends that the wife should have no interest in these options, which were given after separation had occurred and within a week before the divorce complaint was filed, and which vested, at the earliest, twelve months later.[2] The wife concedes that the husband's stock options "were given to him as an incentive for him to accept the position at USA Interactive." However, she contends that he would not have qualified for the job but for her support during the marriage. She also urges that a bright-line rule be employed to determine whether these options are exempt from distribution, and contends that since they were granted before the complaint for divorce was filed, she is entitled to share in them. She also argues that the husband waived his right to claim immunity, since he did not present that argument at trial, but instead argued that the options lacked value.
We disagree with the wife's position. We first find that the arguments presented on appeal have not been waived. The husband has consistently maintained, not only that his vested options lacked value, but also that the stock options did not constitute a marital asset.
We also decline to impose a bright-line rule to a consideration of the distribution of the options as an asset of the marriage. In Painter v. Painter, 65 N.J. 196, 218, 320 A.2d 484 (1974), the Supreme Court stated "that for purposes of determining what property will be eligible for distribution the period of acquisition should be deemed to terminate the day the [divorce] complaint is filed." Although the Court appeared thus to set forth a bright-line rule in its decision, the court observed further:
We are under no illusion that what we have said above will provide certain and ready answers to all questions which may arise as to whether particular property is eligible for distribution. We have sought only to implement the legislative intent, as we discern it, by setting forth what we believe should be the general governing rules. Individual problems must be solved, as they arise, within the context of particular cases.
[Id. at 218 n. 7, 320 A.2d 484.]
We find the present case to present such an individual problem. Critical to us in reaching that conclusion is our consideration of a principal purpose of equitable distribution: namely, to recognize and provide compensation for the contribution of each party to the joint marital enterprise, whether as a homemaker (the role occupied by Camille Robertson) or salary-earner. Pascale v. Pascale, 140 N.J. 583, 609, 660 A.2d 485 (1995) (recognizing marriage as a shared enterprise, the fruits of which should be distributed upon dissolution); Rothman v. Rothman, 65 N.J. 219, 229, 320 A.2d 496 (1974) (recognizing that as the result of the supportive role played by a homemaker-wife, she should "clearly be entitled to a share of family assets accumulated during the marriage."). "[A]ssets acquired after that enterprise or partnership no longer exists should not be so included" in the marital estate. Portner v. Portner, 93 N.J. 215, 219, 460 A.2d 115 (1983).
*474 In Pascale, a case concerning the distribution of options to the wife during the course of her continuing employment but after the divorce complaint had been filed, the Court held that the focus should be on "whether the nature of the asset is one that is the result of efforts put forth `during the marriage' by the spouses jointly, making it subject to equitable distribution." 140 N.J. at 609, 660 A.2d 485. Holding that it would be inequitable to apply the date of complaint rule inflexibly, the Court in Pascale found that the husband should not be denied the benefit of stock options that were earned by the wife during the marriage but were not awarded to her until shortly after the marriage terminated, and that the options at issue had been granted for the "excellent service that [the wife] had provided to the company during her marriage." Id. at 610, 660 A.2d 485.
The reverse situation is presented to us here. The husband moved from the marital home on July 31, 2001 and filed for divorce on September 20, 2001. At the time that the parties separated, the husband was working at a company known as Double Click. Dissatisfied with his position at Double Click, the husband had started a search for different employment in May or June 2001. However, the record reveals that he did not commence his new employment with USA Interactive until September 17, 2001. A separation agreement with Double Click was executed on September 19, 2001. Stock options were issued to the husband immediately upon his employment with USA Interactive. However, the conclusion is inescapable that they were offered as an inducement to commence employment, not as a recognition for past performance with the company, as in Pascale. There is no evidence that the vesting of those options over a subsequent period of four years was designed for any purpose other than as a means to insure the husband's continued employment with the company. As such, the options in no fashion represented compensation attributable to the couple's joint marital endeavors.
On appeal, the wife argues that the husband's qualifications for the USA Interactive position resulted from the accretion of skills and experience occurring during the marriage. Although that argument may be to an extent factually correct, we do not find it useful in the context of an equitable distribution determination, since its acceptance would permit a supportive spouse to claim assets accruing throughout the worklife of the divorced partner, regardless of when the divorce occurred. Such a result would be clearly inequitable, and thus contrary to the principles of "equitable" distribution. Cf. Crews v. Crews, 164 N.J. 11, 29, 751 A.2d 524 (2000) (holding that a wife has no entitlement to share in a former husband's post-divorce good fortune).
As a consequence, we find that the husband in this case has met his burden of establishing the immunity of the USA Interactive stock options from equitable distribution. Pascale, supra, 140 N.J. at 609, 660 A.2d 485; Landwehr v. Landwehr, 111 N.J. 491, 504, 545 A.2d 738 (1988); Painter, supra, 65 N.J. at 214, 320 A.2d 484. The determination of the Family Part judge to the contrary is reversed.

II.
The husband additionally argues that the court abused its discretion in awarding permanent alimony to the wife, urging that she should instead have been awarded limited duration alimony until the parties' oldest child reached the age of sixteen. At this time, he contends, the wife should obtain full-time employment, and alimony should cease. The husband argues further that the wife should have assumed part-time *475 employment, now, and as the result of her failure to do so, income should have been imputed to her.
We find no abuse of discretion on the part of the Family Part judge, whose findings of fact, discussion of the factors relevant to an award of alimony mandated by N.J.S.A. 2A:34-23b (see Crews, supra, 164 N.J. at 25, 751 A.2d 524), and consideration of controlling legal principles were meticulous in nature and fully supported by the evidence contained in the record. Heinl v. Heinl, 287 N.J.Super. 337, 345, 671 A.2d 147 (App.Div.1996). We accord those findings substantial deference. Ibid.; see also Cesare v. Cesare, 154 N.J. 394, 412, 713 A.2d 390 (1998).
The record discloses that the wife, unlike the husband, has not obtained a B.A. degree, but instead has an associate's degree in business from Morris County Community College. She has secretarial experience, having at one time earned an annual salary of approximately $27,000 while working in that profession. However, with the husband's consent, she left the workplace upon the birth of the parties' first child, and she has remained unemployed since 1992, with the exception of some minor consulting work for a former employer and recent minimal work in sales of Mary Kay cosmetics. Contrary to the husband's suggestion, she has never made any significant income in part-time employment. The husband does not suggest that full-time employment would be appropriate at this time.
As the trial judge found, the wife functioned as the primary caretaker for the children and homemaker for the husband throughout the marriage, thereby foregoing any earning capacity she may have had during this period and freeing the husband to achieve significant business success, including present annual earnings in excess of $200,000. She is entitled to compensation for this "transfer of earning power." Cox v. Cox, 335 N.J.Super. 465, 483, 762 A.2d 1040 (App.Div.2000).
Moreover, the education and skills of the wife differ markedly from those of the husband, who is not only a Rutgers College graduate but also a C.P.A., making it unrealistic to assume that she will ever be able to maintain a comparable lifestyle on her earnings alone. Cerminara v. Cerminara, 286 N.J.Super. 448, 461, 669 A.2d 837 (App.Div.1996), certif. denied, 144 N.J. 376, 676 A.2d 1091 (1996). As stated by the court in the present matter:
The wife took care of the home and reared the children full time, and there is not any dispute over the fact that she has been an excellent mother. The husband and the wife agreed that she would stay home full time to take care of the children. But because the husband was not burdened with taking care of three children full time, he was able to devote his time and energy to his career and now earns a high income. The wife's financial position is not so fortunate because she sacrificed valuable time away from the marketplace in order to attend to the family. She is now 39 years of age, and she still has to contend with the demands of being a primary caretaker. She can obtain jobs in the marketplace, but it is improbable that, without considerable effort to make up for lost time, she will be able to earn enough income to live at a standard of living enjoyed during the marriage.
The amount of alimony, fixed by the court at $1160 per week, is demonstrably within the husband's present ability to pay, ibid.; see also Hughes v. Hughes, 311 N.J.Super. 15, 35, 709 A.2d 261 (App.Div. 1998), and was fixed by the court only after a careful evaluation of the wife's needs as reflected in her budget and the reduction by the court of a significant *476 number of items to more accurately reflect current expenses. We note in this regard that the budget recognized by the court as properly applicable to the wife and the three children was less than that claimed by the husband as required for himself, alone.
Moreover, we note that it is anticipated that the amount of the alimony award will be reduced in the future as the result of the projected full-time employment of the wife when the oldest child reaches the age of sixteen. As stated by the court in its decision:
It is anticipated that there will be a change in circumstance when, for example, full time income is imputed to the wife when the oldest child turns 16 years of age. . . . At the appropriate time the husband an make an application for a modification in alimony if there has been a change in circumstance.
As we previously stated, the husband also complains that part-time income was not imputed by the court to the wife at the time that alimony was fixed. In this regard, the court assumed on the basis of the record before it that the husband was willing to forego this exercise, except that he requested an elimination from the wife's budget of the $500 per month savings that accorded with the couple's pre-divorce savings practices. He claimed in that regard that if the wife worked part-time, her earnings would supply the necessary money. The savings amount was, in fact, eliminated. We find no evidential foundation for an imputation to the wife of a greater amount of income at this time.

III.
As a final matter, the husband claims that he should receive a credit, upon sale of the marital residence, for one-half of the sum that he was ordered to expend in repaying a home equity loan on the property utilized during the marriage for home improvements.
It does not clearly appear to us that the Family Court judge decided this issue. The court did note that the husband had a greater present ability to pay the debt, which included the use of six months' severance pay received upon the termination of his employment with Double Click in September 2001 that had not been equitably distributed. On that basis, the court held that the husband should bear the initial responsibility for full payment of the debt. The court stated in its written opinion:
The husband did have, however, the use of the severance pay, which may not be distributable, but can be used to measure a parent's ability to pay support or joint debt. As set forth in Monte v. Monte, 212 N.J.Super. 557, 515 A.2d 1233 (App.Div.1986), [e]ven if debts are determined to be marital, they could be allocated to one party based upon his or her greater earning potential. * * * It may not be an abuse of judicial discretion to divide the assets of the parties equally without requiring them to share the debts. Id. at 567, 515 A.2d 1233. Therefore, the husband shall pay for the home equity loan.
However, the court did not directly address the issue of a credit for payment of the second mortgage in that written opinion, and its reference to case law is equivocal in that regard.
The court's subsequent order provided in connection with the sale of the marital home that: "After closing costs, the parties shall split the net sale proceeds although the Wife shall receive a credit against the Husband's share for one-half of the principal reduction on the first mortgage and the homeowner's insurance premiums"  amounts paid initially by her following *477 the divorce. Because credits to the wife from the proceeds of sale of the marital residence were included in the judgment of divorce, whereas a credit to the husband was not, it can be inferred that such a credit was denied. If this was the court's intent, we find the court's conclusion to have constituted an abuse of discretion.
In Monte v. Monte, 212 N.J.Super. 557, 515 A.2d 1233 (App.Div.1986), the trial court did not charge the wife with repayment of debts, incurred by the husband as the result of loans by his family, that encumbered the marital assets. We found that the trial court's approach to allocation of debts was supported by judicial authority. Id. at 567, 515 A.2d 1233 (citing Schweizer v. Schweizer, 301 Md. 626, 484 A.2d 267 (1984)). And we held further that "it may not be an abuse of judicial discretion to divide the assets of the parties equally without requiring them to share the debts." Ibid. (emphasis supplied). We cited as examples of situations in which such might be the case instances in which the husband intentionally dissipated marital assets or in which an issue existed as to the bona fide nature of the debt or its amount. Id. at 567-68, 515 A.2d 1233. Because the court had not articulated the basis for its decision, we reversed and remanded the case for further factfinding as required by R. 1:7-4.
In the present case, the sole reason articulated by the court for its decision was its determination that the husband was in a better position to pay the debt. Although that assuredly is the case at the present time, and the husband does not contest that fact, we find no basis for any further conclusion (if it exists) that the husband should not be reimbursed for his share of the payment upon the sale of the house. At that time, the wife will still be receiving permanent alimony sufficient to maintain the marital lifestyle and thus her financial circumstances will have no significant bearing on the credit. Moreover, receipt of proceeds of the sale of the house will result from the equitable distribution of that asset in compensation for the parties' contributions to the marriage, which the court determined to be equal when reaching all other decisions with respect to equitable distribution. We perceive no reasoned basis for the imposition of an inequality in distribution in this one particular instance, based upon the husband's income, when that factor was not otherwise considered for equitable distribution purposes, and nothing distinguishes this debt from any other encumbrance on the residence. We find any decision to the contrary to constitute an abuse of discretion. Borodinsky v. Borodinsky, 162 N.J.Super. 437, 443-44, 393 A.2d 583 (App. Div.1978).
Affirmed in part, reversed in part and remanded for entry of an amended dual judgment of divorce in conformance with this opinion.
NOTES
[1] Both parties sought reconsideration in motions that were decided after the husband's notice of appeal had been filed on December 22, 2003 and after the court had lost jurisdiction of the case. R. 2:9-1(a). The trial court's determination of those motions does not concern any issue raised on appeal. We have been offered no basis for disturbing the court's order, entered on February 6, 2004, and therefore deem any objections to it to have been waived.
[2] The husband asserts that at the time of trial, a portion of the options had vested, but they were not profitable.