**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5057-18T1

L.G.,

    Plaintiff-Respondent,

v.

L.G.,[1]

    Defendant-Appellant.

_____

Argued telephonically May 27, 2020 –
Decided July 17, 2020

Before Judges Yannotti, Currier and Firko.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Morris County, Docket No. FM-14-0488-16.

Matthew J. Pires argued the cause for appellant (Weiner Law Group, LLP, attorneys; Matthew J. Pires, on the briefs).

L.G., respondent, argued the cause pro se.

---

[1] We use initials to identify the parties because in the opinion, we discuss personal and financial information about the parties and one of their children. R. 1:38-3(d)(1), (3), and (9).

PER CURIAM

Defendant appeals from and challenges certain provisions of the Dual Final Judgment of Divorce dated June 12, 2019, and a post-judgment order dated July 26, 2019. We affirm in part, reverse in part, and remand for further proceedings.

I.

We briefly summarize the pertinent facts. The parties were married in May 1996, and they have two children, S.G. (born in April 1998) and M.G. (born in December 2002). Defendant is the owner and sole employee of a construction business. Defendant drew a salary from a business account. He asserted that in 2019, he had an annual salary of $245,000.

Plaintiff graduated from the Fashion Institute of Technology (FIT) in 1995, with a degree in fine arts and interior design. In March 1997, plaintiff was working as an interior designer earning $32,000 per year. She worked until S.G. was born. Since that time, she has been a stay-at-home parent.

In 1997, the parties purchased the marital home in Rockaway and borrowed $200,000. Repayment of the loan was secured by a mortgage on the property. In 2003, the parties obtained a home equity line of credit (HELOC) for emergencies. During the recession that began in 2007, the parties withdrew

A-5057-18T1

$80,000 from the HELOC to cover expenses for defendant's business. By 2014, the loan for the purchase of the marital home had been fully repaid.

In October 2015, plaintiff filed a complaint for divorce, and defendant filed an answer and counterclaim. Both parties alleged irreconcilable differences. At the time plaintiff filed her complaint, the outstanding balance on the HELOC was about $68,000.

In December 2015, after defendant allegedly threatened her, plaintiff obtained a temporary restraining order (TRO). Several days after the court issued the TRO, defendant was arrested for driving under the influence and possession of cocaine. According to plaintiff, during the marriage, defendant abused cocaine. In February 2016, a Family Part judge entered a final restraining order (FRO).

Plaintiff alleged that after the court issued the FRO, defendant began to deny her access to marital funds and she sought pendente lite support payments. The court ordered defendant to pay plaintiff $5200 per month; however, defendant only paid plaintiff $2000 per month. In May 2016, defendant withdrew $150,000 from the HELOC. He used much of those funds to pay litigation expenses, in violation of court orders precluding such use of the funds.

The judge conducted a trial in the matter. The parties testified, and defendant presented testimony from Brian T. Corcoran, a forensic accountant. On June 12, 2019, the judge filed the judgment with an attached statement of reasons.

The judgment provides, among other things, that defendant shall pay plaintiff non-taxable alimony of $6700 per month for fourteen years, and unallocated child support in the amount of $1300 per month. The judgment states that plaintiff shall retain the marital residence, subject to the HELOC, and pay defendant $8701, which represents his remaining equity interest in the residence.

The judgment further provides that defendant's pendente lite support arrears are $19,600, and defendant would be responsible to pay the first $40,000 of M.G.'s college costs because he deleted an account established by the parties for S.G.'s college costs. In addition, the judgment states that plaintiff is entitled to $16,299 for the equitable distribution of the parties' marital property, and defendant shall pay plaintiff the HELOC funds remaining in his account at Bank of America.

Defendant filed a notice of appeal on July 23, 2019. Thereafter, the trial judge filed an order dated July 26, 2019, which amended the judgment, and

provided an amplification of the reasons for his decision. The July 26, 2019 order states that plaintiff shall remove defendant from the HELOC within 180 days and, if she is unable to do so through no fault of her own, plaintiff must hold defendant harmless for any post-judgment HELOC liabilities. The order also increased the amount of plaintiff's equitable distribution payment to $32,110.85.

On appeal, defendant argues the trial judge erred by: (1) not imputing any income to plaintiff in computing alimony and child support; (2) finding plaintiff's statements as to the marital and current lifestyle expenses credible and awarding her alimony of $6700 per month; (3) awarding plaintiff limited duration alimony for fourteen years; (4) calculating the amount of his pendente lite arrears; (5) failing to provide the parties with specific guidance regarding the removal of his name from the HELOC; (6) ordering defendant to disburse the HELOC funds in his account to plaintiff; and (7) requiring that he pay the first $40,000 of M.G.'s college costs.

## II.

The scope of our review of the trial court's findings of fact is "limited." Cesare v. Cesare, 154 N.J. 394, 411 (1998). An appellate court should not disturb the trial court's fact findings unless they "are so manifestly unsupported

by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Id. at 412 (quoting Rova Farms Resort, Inc. v. Investors Ins. Co., 65 N.J. 474, 484 (1974)). Our deference to the trial court's fact-finding is "especially appropriate 'when the evidence is largely testimonial and involves questions of credibility.'" Ibid. (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)).

Deference to the trial court's credibility findings also is warranted because the trial judge had the opportunity to observe the witnesses and hear their testimony. Gallo v. Gallo, 66 N.J. Super. 1, 5-6 (App. Div. 1961). Consequently, the trial judge "has a better perspective than a reviewing court" to evaluate "the veracity of witnesses." Pascale v. Pascale, 113 N.J. 20, 33 (1988).

We also accord deference to fact-finding by the Family Part because of that court's "special jurisdiction and expertise in family matters . . . ." Cesare, 154 N.J. at 413. We note, however, that "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

III.

As noted, defendant argues that the trial judge erred by failing to impute income to plaintiff for purposes of alimony and child support. Defendant contends the evidence shows that plaintiff has the ability to return to work and she has not made sufficient efforts to obtain such employment.

"In computing alimony, '[i]ncome may be imputed to a party who is voluntarily unemployed or underemployed.'" Gnall v. Gnall, 432 N.J. Super. 128, 158 (App. Div. 2013) (alteration in original) (quoting Golian v. Golian, 344 N.J. Super. 337, 341 (App. Div. 2001)). Imputation of income is a "discretionary matter not capable of precise or exact determination but rather requires a trial judge to realistically appraise capacity to earn and job availability." Bermeo v. Bermeo, 457 N.J. Super. 77, 85 (App. Div. 2018) (quoting Gnall, 432 N.J. Super. at 158). The trial court's decision on the imputation of income will not be disturbed unless shown to be a mistaken exercise of discretion. Gnall, 432 N.J. Super. at 158 (citing Robertson v. Robertson, 381 N.J. Super. 199, 206 (App. Div. 2005)).

In making its decision, the trial court must determine "'whether the [spouse] has just cause' for voluntarily remaining unemployed or underemployed." Ibid. (alteration in original) (quoting Caplan v. Caplan, 182

7

N.J. 250, 268 (2005)).  Among other things, the court should consider the reason and intent for the voluntary unemployment or underemployment, the ages of any children in the household, and childcare alternatives.  See Child Support Guidelines, Pressler & Verniero, Current N.J. Court Rules, Appendix IX-A to R. 5:6A, www.gannlaw.com (2020).

Here, the record shows that plaintiff graduated from FIT in 1995 with a degree in fine arts and interior design.  Thereafter, she worked as an interior designer.  In 1997, plaintiff earned $32,000.  She ceased working in 1998 when S.G. was born.  Thereafter, plaintiff was a stay-at-home parent, with primary responsibility for the care of the children and maintenance of the household.

At trial, L.G. maintained that she had just cause to remain unemployed. At the time of trial, M.G. was sixteen years old and entering his junior year in high school. Plaintiff testified that M.G. was receiving home instruction through the local school district due to certain psychological issues.  M.G. had been diagnosed with Attention Deficit Hyperactivity Disorder, Occupational Defiance Disorder, and anxiety.

According to plaintiff, M.G. cannot receive home instruction unless she is present.  She stated that M.G. has two tutors who come to plaintiff's home four times each week. She explained that M.G.'s homeschooling basically

consists of sessions that last two hours, which vary "depending on [the tutors'] schedules and things." She said that, at times, the tutors spend "extra hours" instructing M.G. on certain subjects.

Plaintiff further testified that M.G. had "an open invitation" to return to high school for instruction. She thought that would occur in September 2018, but M.G. continued homeschooling. Plaintiff said a schedule had been prepared for the school year beginning in September 2019, but it remained to be seen whether M.G. could attend school on a consistent basis. She stated that, depending on M.G.'s behaviors, it was possible he could have a combination of in-school education and home schooling.

Plaintiff testified that M.G.'s status affected her ability to seek employment. She stated that occasionally M.G. gets in "a mood" and does not want to meet with his tutors. According to plaintiff, the tutors leave but sometimes they are willing to return to the home for the instruction "a little later."

Plaintiff further testified that if M.G. attends school on a consistent basis, she would be able to obtain employment. Plaintiff said, however, that M.G. was "very unpredictable" regarding school attendance. She also said M.G. has "done

9

some dangerous things in the house[,]" including "[e]xperiment[ing] with fire." He has also damaged the house by acting out violently.

On cross-examination, plaintiff was asked if she had sent out any applications or resumes to prospective employers. She replied that she has not done so. She was asked if she was interested in returning to the field of interior design. She said she had "researched" the requirements for returning to work "at some point." She also said she has not looked into any kind of employment other than interior design. She mentioned that she sells some items online and earned a modest amount of income, but she did not consider this a business. She said she was "not ready" to return to work at that time.

In his statement of reasons, the judge found that plaintiff was fifty-five years old and physically able to work. The judge noted that plaintiff has an associate's degree in interior design from FIT, but she has not been employed in that field since the 1990's. The judge found plaintiff had "to be at home when [M.G.] receives home instruction."

The judge stated that after M.G. completes his home instruction, "plaintiff will likely be able to find an entry level position in sales or interior design." The judge further found that plaintiff "will be required to train before beginning employment due to the length of her absence from the job market."

10

In the amplification of his decision, the judge noted that "plaintiff has been out of the job market for over twenty years" and she must be "at home on a full-time basis in order for [M.G.] to receive home instruction from the school district." The judge stated that, for this reason, "the only income imputed to plaintiff . . . is the income she receives in spousal support."

We are convinced the judge's decision to impute no income to plaintiff other than spousal support was a mistaken exercise of discretion. As we have explained, the judge found that plaintiff is able to return to work and she is likely to find an entry-level position in sales or interior design. The judge decided that plaintiff could not return to work while M.G. is receiving home instruction and, for that reason, did not impute any income to her.

It is undisputed that M.G. has certain behavioral issues and receives home schooling, with the approval of the local school district. According to plaintiff, M.G. receives instruction four times a week, in two-hour sessions, although he sometimes receives additional instruction on certain subjects. Plaintiff stated that she must be present when M.G. receives homeschooling, but her testimony shows that M.G. only receives instruction for limited times during weekdays.

Plaintiff's testimony shows that she is capable of obtaining employment during the work week, at least on a part-time basis, while M.G. is not receiving

11

home schooling. She provided no explanation as to why she could not perform some work at home. Plaintiff insisted she must be present for M.G.'s instruction; however, plaintiff did not indicate that she explored alternative arrangements for supervision of M.G. We conclude plaintiff failed to establish just cause for her decision to remain voluntarily unemployed. We therefore remand the matter to the trial court for further proceedings on the amount of income that should be imputed to plaintiff.

On remand, the trial court should impute income to plaintiff on either a full-time or part-time basis, depending upon the hours L.G. is required to be present for M.G.'s homeschooling, her ability to work in the home, and the availability of child-care alternatives. The court should base its decision on the average earnings for positions in sales or interior design as reported by the New Jersey Department of Labor, or such other evidence as the parties may present.

If there is a genuine issue of material fact as to the amount of income that should be imputed to plaintiff, the court shall conduct a plenary hearing on that issue. We express no opinion on the amount of income that should be imputed to plaintiff. After determining the amount of income that should be imputed to plaintiff, the court shall recompute the awards for alimony and child support, and the amount of defendant's pendente lite support arrears.

IV.

Defendant argues that the trial court's findings regarding the award of alimony are not supported by sufficient credible evidence. He contends the judge erred by finding that plaintiff's testimony about the marital and her current lifestyle expenses was credible.

We note initially that in his initial statement of reasons, the judge found that defendant's testimony raised credibility issues. The judge noted that defendant admitted he underreported expenses on his Case Information Statement (CIS), and there were contradictions in defendant's testimony regarding his expenses and his ability to pay additional support. The judge found defendant's testimony regarding vacations and other matters indicated that defendant was intentionally underreporting expenses and likely underreporting income.

On the other hand, the judge found that plaintiff's testimony regarding the marital and her current lifestyle expenses was credible. The judge noted that her demeanor did not change when answering questions on cross-examination. The judge also noted that plaintiff's testimony was fully supported and corroborated by the documentary evidence submitted to the court. In addition, the judge found there were no material contradictions in plaintiff's testimony.

A-5057-18T1

As noted, we defer to the trial court's findings when "the evidence is largely testimonial and involves questions of credibility." Cesare, 154 N.J. at 412 (quoting J.W.D., 149 N.J. at 117). We are convinced the record supports the judge's credibility findings. The judge did not err by finding that plaintiff's testimony was consistent with the documentary evidence and generally more credible than defendant's testimony.

Defendant argues, however, that plaintiff's testimony that the parties had annual net marital lifestyle expenses of $220,836 was false. He contends plaintiff's testimony differed from the amounts reported on her CIS. He notes that on her CIS, plaintiff reported monthly Schedule A and B expenses of $5278, whereas at trial she testified that these expenses were "in the neighborhood" of $4500.

Defendant recognizes, however, that plaintiff acknowledged the loan on her car had been paid off and therefore the $700 reported for her car payments reduced the Schedule A and B expenses to about $4500, as plaintiff testified. Therefore, the judge did not err by accepting plaintiff's testimony about the Schedule A and B expenses the parties incurred during the marriage.

Defendant also contends plaintiff overreported expenses on her CIS regarding the vacations the parties took during the marriage. Defendant notes

that plaintiff asserted the parties spent about $12,000 per year on vacations. Defendant claimed, however, that the parties spent only $200 per month or $2400 per year on vacations.

The judge found the parties spent $380 per month or about $4500 per year for vacations during the marriage. We note that neither party presented the court with detailed evidence to support their respective claims. Moreover, the judge found that defendant's testimony regarding vacations was not credible. We conclude there is sufficient credible evidence in the record to support the judge's finding as to the amount the parties spent on vacations during the marriage.

In addition, defendant contends that on her CIS, plaintiff overreported the Schedule C personal expenses for herself and M.G. He asserts that on the CIS, plaintiff stated she spends $45 per month for prescription drugs. According to defendant, plaintiff testified that no one in the family was then taking prescription drugs. However, on the CIS, plaintiff expressly noted that M.G. was refusing to take his medications, and the costs for prescription drugs will increase when he resumes taking his medications.

Defendant also asserts plaintiff falsely stated on her CIS that she pays $226 per month for psychiatric or psychological counseling. He asserts plaintiff testified at trial that M.G. is not presently seeing a private counselor or

15

psychiatrist. On her CIS, however, plaintiff stated that the expenses reported were monies still owed for M.G.'s counseling.

Defendant further asserts that plaintiff overstated the amount of her current lifestyle expenses on her CIS. He asserts plaintiff incurred credit card debt of about $1085 per month but on her CIS, she reported that she currently pays $847 per month for her credit card debt. The fact that plaintiff was only able to pay $847 per month towards the outstanding credit card debt does not, however, indicate that plaintiff's expenses did not exceed that amount.

Defendant also argues that the trial judge erred by refusing to permit him to testify as to the parties' joint bank account statements, which he claims would have supported his claims regarding the parties' "true and accurate" marital lifestyle expenses. At trial, defendant's attorney indicated that he wanted to review the bank statements during defendant's testimony to show that the parties' expenses and credit card payments had been paid off each month.

The judge stated that there was no need to go through each statement because there was not disagreement between the parties on the issue. The judge noted that the parties essentially agreed that all of the marital expenses reported on plaintiff's CIS had been paid on a regular basis either using funds in the joint account at Bank of America, a personal American Express card, or certain

16

business accounts. The judge 's evidentiary ruling was not a mistaken exercise of discretion. See N.J.R.E. 611(a) (a judge may exercise reasonable control of the examination of witnesses to "avoid needless consumption of time . . . .").

We note that on appeal, defendant also argues that the judge erred by awarding plaintiff child support and alimony that is more than fifty percent of what he asserts is his net annual income of $159,250. Defendant also contends the trial court's award of alimony was inconsistent with N.J.S.A. 2A:34-23(b) because it allegedly results in plaintiff having a greater entitlement to the marital standard of living than defendant.

We need not address these arguments because we have ordered the judge to impute income to plaintiff and redetermine the child support and alimony awards. On remand, defendant may renew these arguments in the trial court.

V.

Defendant contends the trial court abused its discretion because the court failed to consider and weigh all of the relevant factors under N.J.S.A. 2A:34-23 in determining the amount and length of the alimony award. He contends the court did not undertake a thorough lifestyle analysis. He also contends the court erred by awarding limited duration alimony for fourteen years.

"[T]he goal of a proper alimony award is to assist the supported spouse in achieving a lifestyle that is reasonably comparable to the one enjoyed while living with the supported spouse during the marriage." Crews v. Crews, 164 N.J. 11, 16 (2000). "[T]he standard of living experienced during the marriage . . . serves as the touchstone for the initial alimony award and for adjudicating later motions for modification of the alimony award . . . ." Ibid.

"The supporting spouse's obligation is set at a level that will maintain that standard." Innes v. Innes, 117 N.J. 496, 503 (1990). "Any award of alimony requires an analysis of the statutory factors[,]" as set forth in N.J.S.A. 2A:34-23(b). Cox v. Cox, 335 N.J. Super. 465, 478 (App. Div. 2000). The court may award four types of alimony: "open durational alimony[,] rehabilitative alimony[,] limited duration alimony or reimbursement alimony to either party." N.J.S.A. 2A:34-23(b).

"Limited duration alimony is available to a dependent spouse who made 'contributions to a relatively short-term marriage that . . . demonstrated the attributes of a marital partnership' and has the skills and education necessary to return to the workforce." Gordon v. Rozenwald, 380 N.J. Super. 55, 61 (App. Div. 2005) (quoting Cox, 335 N.J. Super. at 483). Furthermore, N.J.S.A. 2A:34-23(c) provides in pertinent part that "[f]or any marriage or civil union less than

[twenty] years in duration, the total duration of alimony shall not, except in exceptional circumstances, exceed the length of the marriage or civil union."

As noted, defendant argues that the trial judge did not make a thorough analysis of the marital lifestyle and simply awarded plaintiff the full amount of her Schedule A and B expenses. This contention lacks sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

We note, however, that the trial judge provided a thorough and detailed analysis of the evidence pertaining to the marital lifestyle. The court's findings in this regard are supported by sufficient credible evidence in the record.

Defendant also argues that the trial judge erred by providing for a fourteen-year term of alimony when defendant had already paid pendente lite support for two years and seven months up to the date of the judgment. However, the judge stated that in making the award, he considered defendant's "pendente lite support paid to date." There is sufficient credible evidence in the record to support the judge's determination awarding plaintiff limited duration alimony for fourteen years.

Defendant also contends the judge erred by ordering him to pay alimony until he is seventy years of age. Defendant contends his alimony obligation

19

should terminate when he becomes sixty-seven years old, which is when he can claim social security retirement benefits.

The judge found that defendant is self-employed and could be gainfully employed in his own business for another fourteen years. Defendant did not claim he was physically incapable of working until the age of seventy. The court did not abuse its discretion by requiring defendant to pay plaintiff alimony beyond the date when he is eligible to receive social security retirement benefits.

## VI.

Here, the judge ordered that plaintiff would retain the marital residence, subject to the HELOC, and required plaintiff to remove defendant's name from the HELOC. On appeal, defendant argues the judge erred by failing to provide plaintiff with specific directions on the actions she must take to remove his name from the HELOC.

At trial, defendant testified that he believed the marital home had a value of $530,000. From that amount, the judge deducted the balance outstanding on the HELOC as of the date the complaint was filed, which was $68,000, and found that there was $462,000 in equity in the home. The judge found each party was entitled to $231,000 in the equity.

A-5057-18T1

The judge noted that after the complaint was filed, defendant increased the HELOC balance to $290,299. The judge subtracted the marital debt and the additional debt defendant had incurred from his share of the equity and found defendant was entitled to receive $8701. The judge ordered that plaintiff would retain the residence, subject to the HELOC, and plaintiff was ordered to remove defendant's name from the HELOC within 180 days after the judgment.

The post-judgment order of July 26, 2019, further provided that, in the event plaintiff was unable to remove defendant from the HELOC through no fault of her own, she must hold defendant harmless from any liabilities related to the HELOC post-divorce.

On appeal, defendant does not argue that the judge erred by allowing plaintiff to maintain the former marital residence. He argues, however, that the judge erred by failing to provide plaintiff with specific directions as to the actions she must take to remove his name from the HELOC.

Defendant contends he is "deeply concerned" that without proper instructions, plaintiff will not take his name off the HELOC. He asserts that if plaintiff does not remove his name from the HELOC, it will have an adverse effect on his credit rating.

21

We are convinced, however, that the judge's order provides sufficient direction to the parties as to the action plaintiff must take with regard to the HELOC. The July 26, 2019 order requires plaintiff to remove defendant from the HELOC within 180 days and requires that she indemnify defendant if she is unable to do so through no fault of her own. If defendant believes he requires further relief with regard to the HELOC, he must pursue the matter in the trial court.

VII.

Defendant contends the trial judge erred by ordering him to pay plaintiff the monies remaining from the HELOC that were deposited in his personal account. We disagree.

The record shows that in May 2016, defendant withdrew $150,000 from the HELOC and deposited the funds in his savings account at Bank of America. He testified that he used much of the HELOC funds to pay litigation expenses, even though the court's orders precluded him from doing so.

The judgment provides that the remaining HELOC funds in defendant's Bank of America account shall be paid to plaintiff within thirty days. Defendant claims there are no HELOC funds in the account.

However, according to plaintiff, $14,200 from the HELOC withdrawal remained on deposit in defendant's Bank of America account. She notes that in his CIS dated February 27, 2019, defendant reported that the account had a balance of $13,500. We are convinced there is sufficient credible evidence in the record to support the court's determination that funds from the HELOC remained on deposit and that defendant must pay such funds to plaintiff.

We note that in her brief, plaintiff asserts defendant has not complied with the court's order. She claims he used the funds to pay for litigation expenses. Plaintiff requests that we order the trial court to direct defendant to comply with the order. We decline to do so. If defendant has not complied with the judgment, as plaintiff claims, she must seek relief in the Family Part.

## VIII.

Defendant contends the trial court erred by ordering him to pay the first $40,000 in M.G.'s college costs. Here, the trial judge noted that the parties had established separate accounts for the college expenses of their children, S.G. and M.G. It is undisputed that defendant withdrew $40,000 from the account established for M.G. and used those funds to pay S.G.'s college costs.

The judge determined that because defendant withdrew the monies from the account established for M.G., defendant would be responsible for paying the

first $40,000 of M.G.'s college costs. Thereafter, the parties would be responsible for M.G.'s college costs "commensurate" with their respective incomes, subject to any student loans, grants, or aid M.G. may receive.

On appeal, defendant argues that the monies in M.G.'s account were marital funds, and both parties are responsible to pay for M.G.'s college costs, in accordance with their respective incomes. He argues that under the circumstances, the judge abused his discretion by ordering him to pay the first $40,000 of M.G.'s college costs. We disagree.

The record shows that the parties established the account to pay for M.G.'s college costs. Defendant withdrew the funds from the account and used them to pay S.G.'s college costs without court authorization or approval. The court never made any judgment as to the amount, if any, that plaintiff would be required to contribute towards S.G.'s higher education. Under the circumstances, the trial court did not abuse its discretion by requiring defendant to pay the first $40,000 in M.G.'s college costs.

Affirmed in part, reversed in part, and remanded to the trial court for further proceedings in accordance with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

24

A-5057-18T1