**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3363-19

SALVATORE SALSA,

    Plaintiff-Appellant,

v.

KATHERINE SALSA,

    Defendant-Respondent.

_____

        Submitted October 12, 2021 – Decided November 10, 2021

        Before Judges Sabatino, Rothstadt, and Mayer.

        On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Middlesex County, Docket No. FM-12-0268-19.

        George G. Gussis, attorney for appellant.

        Rozin Golinder Law, LLC, attorneys for respondent (Elizabeth Rozin-Golinder and Alyssa A. Bartholomew, on the brief).

PER CURIAM

After a divorce trial that spanned over nine intermittent days between July 2019 and January 2020, the Family Part trial judge issued a final order and eleven-page decision on March 20, 2020.  The decision predominately addressed issues of equitable distribution, as the parties each waived alimony.  A central aspect of the court's decision was its division of several parcels of real estate purchased before and after the parties married.

Plaintiff Salvatore Salsa ("the husband")[1] appeals numerous aspects of the final judgment of divorce.  Most critically, he contests the court's division of the parties' real estate, and its delineation of which parcels were premarital assets owned solely by defendant Katherine Salsa ("the wife") and which ones were marital assets subject to equitable distribution.  The husband further appeals the court's disposition of various financial accounts and motor vehicles, the court's denial of his request to shift his counsel fees to the wife, and a few other miscellaneous issues.  The wife has not cross-appealed.

For the reasons that follow, we vacate in part the final judgment and remand the case for further consideration of the equitable distribution award.  Most importantly, the trial court needs to reconsider that award—and make more

---

[1] We use the terms "husband" and "wife" for ease of expression, mindful some of the relevant transactions and events occurred before the parties married and that they are now former spouses.

A-3363-19

detailed findings—in light of undisputed evidence that the parties commingled rental income and other funds derived from properties the wife purchased before the marriage, but which the husband thereafter renovated and maintained, with rental income and funds derived from properties bought after the husband and wife married.

We also remand concerning the court's disposition of the vehicles and certain financial accounts. We affirm as to the other issues, including the court's ruling that both parties bear their own respective attorney's fees.

I.

Although the record is extensive, there is no need for our purposes to describe the facts and evidence at length. The following abbreviated summary will suffice.

The parties were engaged on March 27, 1998, a date the court chose to separate premarital assets from marital assets. The husband was skilled in construction, and for many years he operated a landscaping business. The wife was a State employee. The parties married on April 25, 1999. They had two children together.[2]

---

[2] The parties entered into a consent order resolving issues concerning the children.

A-3363-19

Before they were married, the wife bought six residential properties in New Brunswick and elsewhere with her own funds. The husband, who had a real estate license and knew the local market, renovated and maintained them.

After they married, they bought numerous other properties.[3] Eventually, the couple earned rental income from the properties. The wife managed them and eventually left her job with the State to do so. Over the years they refinanced several of them.

At one point the parties owned close to thirty rental units across the properties, and the husband maintained and repaired them all, the extent to which is disputed by the parties. The husband filed for divorce in July 2018. Hence, the marriage lasted nineteen years. As of the time of trial, the rental properties were generating a monthly income of about $12,000.

The husband contends he is entitled to equitable distribution for the premarital properties, based on the "sweat equity" he devoted to their repair, renovation, and upkeep. The wife contends equitable distribution is not

---

[3] The thirteen premarital and marital properties identified in the court's opinion were: 9 Seventh Street, 313 Townsend Street, 151 Hale Street, 74 Welton Street, 274 Ward Street, 12 Remsen Street, 17 Goodale Circle, 30 Welton Street, 384 Delavan Street, 42 S. Pennington Street, 322 S. Broad Street, 157 N. Broad Street, and 363 Cranbury Road. All of these properties were located in either New Brunswick, Trenton, or East Brunswick.

A-3363-19

necessary because the husband was either reimbursed directly for the work he performed on the properties, or, if not reimbursed directly, she argues he benefitted financially from them to the extent the properties' income stream was used to help pay their mutual household expenses.

The parties did not keep segregated accounts that separated income and expenses for the premarital properties from the income and expenses for the marital properties. As we will discuss in this opinion, the record appears to show the parties commingled funds relating to the premarital properties and the marital properties, and also combined them with revenues from the husband's landscaping business.

Before trial, the parties sold several of the properties, and they split the sales proceeds evenly. The husband characterized that as proof of an enforceable commitment to divide all of the properties in half. No written settlement agreement, however, was ever signed, and the court agreed with the wife that she had not waived her right to argue at trial that the husband was not entitled to half the value of those premarital properties which she argued she exclusively owned.[4]

---

[4] We affirm that sound determination, which is consistent with the wife's trial testimony that she told the husband she wanted in the divorce what she was

The court divided the properties bought after the marriage evenly in the final judgment, and neither party challenges that disposition. In addition, the court equitably distributed two of the six properties (274 Ward Street and 12 Remsen Avenue), which the wife had purchased before the marriage but after the parties' engagement upon a finding they were purchased in contemplation of the marriage.

The court assigned to the wife, however, the rest of the properties bought before the couple was married. The court determined the wife used her own money to acquire them and had not bought those properties in contemplation of marriage. It ordered the husband to return to the wife any proceeds he had received from the sale of those premarital properties.

With respect to credibility, the court's written opinion identified shortcomings of the rambling and digressive testimony of both parties. The parties' respective testimony also greatly conflicted with respect to the nature of the premarital properties, the purpose behind buying them, and the husband's role in repairing and maintaining both the premarital and marital properties. On the whole, the court found the testimony of the wife comparatively more credible

---

"entitled to," but did not know exactly what that would be. Hence, we address the merits of the equitable distribution in this opinion.

than that of the husband, although the opinion did not specify which parts of her narrative were more believable.

The husband presents numerous issues on appeal, mostly contesting the denial of his claims for an equitable share of the premarital properties. He disputes the court's disposition of the parties' vehicles and bank accounts. The husband also complains the trial stretched out over eight months, to his alleged disadvantage. He further asserts the court pre-judged the case and was biased against him, and that its written findings were inadequate. He further argues the court should have made the wife pay his counsel fees in addition to her own.

## II.

The law of equitable distribution that governs this appeal is well established by statutes and case law. In general, property acquired by spouses during their marriage is subject to equitable distribution. When divorcing parties cannot agree on how to distribute their property, the Family Part should use its discretion to effectuate a fair and just division of marital assets. Steneken v. Steneken, 183 N.J. 290, 302-04 (2005). The court has such broad discretionary authority because marriage is a "shared enterprise," similar to a "partnership." Robertson v. Robertson, 381 N.J. Super. 199, 204 (App. Div. 2005) (quoting Pascale v. Pascale, 140 N.J. 583, 609 (1995)). For purposes of

A-3363-19

equitable distribution, the court must identify the marital property, determine its value, and equitably distribute it. See, e.g., Painter v. Painter, 65 N.J. 196 (1974). The Legislature has prescribed in N.J.S.A. 2A:34-23.1 sixteen factors a court should consider in awarding equitable distribution. We underscore several of the factors that appear to be most pertinent in this case:

a. The duration of the marriage or civil union;

b. The age and physical and emotional health of the parties;

c. The income or property brought to the marriage or civil union by each party;

d. The standard of living established during the marriage or civil union;

e. Any written agreement made by the parties before or during the marriage or civil union concerning an arrangement of property distribution;

f. The economic circumstances of each party at the time the division of property becomes effective;

g. The income and earning capacity of each party, including educational background, training, employment skills, work experience, length of absence from the job market, custodial responsibilities for children, and the time and expense necessary to acquire sufficient education or training to enable the party to become self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage or civil union;

h. The contribution by each party to the education, training or earning power of the other;

i. The <u>contribution of each party to the acquisition, dissipation, preservation, depreciation or appreciation in the amount or value of the marital property,</u> or the property acquired during the civil union as well as the contribution of a party as a homemaker;

j. The tax consequences of the proposed distribution to each party;

k. The <u>present value</u> of the property;

l. The need of a parent who has physical custody of a child to own or occupy the marital residence or residence shared by the partners in a civil union couple and to use or own the household effects;

m. The <u>debts and liabilities</u> of the parties;

n. The need for creation, now or in the future, of a trust fund to secure reasonably foreseeable medical or educational costs for a spouse, partner in a civil union couple or children;

o. The extent to which a party deferred achieving their career goals; and

p. <u>Any other factors</u> which the court may deem <u>relevant</u>.

[N.J.S.A. 2A:34-23.1 (emphasis added).]

An asset purchased prior to marriage may be subject to equitable distribution if it was intended to be a marital asset. Weiss v. Weiss, 226 N.J. Super. 281, 287 (App. Div. 1988). However, premarital property is not eligible for equitable distribution if it is kept separate from the marital assets. Painter, 65 N.J. at 214.

A spouse who asserts an asset is "immune" from equitable distribution bears the burden of establishing such immunity. Ibid.; Dotsko v. Dotsko, 244 N.J. Super. 668, 676 (App. Div. 1990) (holding that funds placed into a joint account for a short period were separate if the parties' intention was to keep them separate).

Most importantly here, premarital property may lose its immunity if the owner commingles it with marital assets, with the intent to gift it to the marital enterprise. See, e.g., Ryan v. Ryan, 283 N.J. Super. 21, 25 (Ch. Div. 1993) (ruling that a husband's personal injury settlement was not immune from equitable distribution because it had been deposited in the same account as the wife's related loss of consortium recovery and then invested in a dwelling held in their joint names).

If an asset is immune from equitable distribution, any increase in its value is also immune, unless the increase is due to the efforts of the non-owner spouse.

A-3363-19

Sculler v. Sculler, 348 N.J. Super. 374, 381 (Ch. Div. 2001). In determining whether the non-owner spouse has contributed to the increase in value of an immune asset, the court must first determine whether the asset is active or passive. Valentino v. Valentino, 309 N.J. Super. 334, 338-39 (App. Div. 1998). The value of a passive asset fluctuates "based exclusively on market conditions," whereas an active asset's value increases because of the "contributions and efforts by one or both spouses toward the asset's growth and development . . . ." Id. at 338.

When an active asset increases in value only because of the efforts of the owner, the value is not distributable. Ibid. However, when the value of an active asset increases due to the efforts of the non-owner spouse, either alone or in conjunction with the efforts of the owner spouse, "the appreciation is subject to distribution." Ibid. The court is required to determine "the extent the original investment has been enhanced by contributions of either spouse." Ibid.

We apply these established principles of equitable distribution in reviewing the issues raised on appeal. In undertaking that review, we are mindful that appellate review "pertaining to the division of marital assets is narrow." Sauro v. Sauro, 425 N.J. Super 555, 573 (App. Div. 2012) (citing Valentino, 309 N.J. Super. at 339). We must decide whether the court

"mistakenly exercised its broad authority to divide the parties' property or whether the result reached was bottomed on a misconception of law or findings of fact that are contrary to the evidence." Ibid. (citing Genovese v. Genovese, 392 N.J. Super. 215, 233 (App. Div. 2007). Generally, the trial court's determinations as to which assets are available for distribution, as well as the valuation of those assets, are given deference so long as they are amply supported by the record. La Sala v. La Sala, 335 N.J. Super. 1, 6 (App. Div. 2000).

Even so, at times we will reverse a trial court's decision on equitable distribution if the court "failed to consider all of the controlling legal principles," or when its analysis was "clearly unfair or unjustly distorted by a misconception of law." M.G. v. S.M., 457 N.J. Super. 286, 294 (App. Div. 2018) (quoting Gonzalez-Posse v. Ricciardulli, 410 N.J. Super. 340, 354 (App. Div. 2009)).

## III.

### A.

Applying these principles to the trial court's decision in light of the record, we are constrained to vacate in part the equitable distribution of the properties and remand for reconsideration and for the court to make additional findings. Our main concern focuses upon the conceded commingling of money derived

from the premarital real estate with the money derived from the marital real estate.[5]

During her testimony, the wife admitted that she deposited into what was known as "the Magyar account" rental proceeds from both premarital and marital properties. She further acknowledged she used those funds to support the marital lifestyle and pay all expenses for the properties. She made no distinction between premarital and marital properties with respect to rental proceeds or payments for repairs. Instead, all rental income was evidently commingled.

In addition, the record further reflects that the premarital properties were mortgaged and used as leverage to purchase marital properties. As we have already noted, it is undisputed the husband completed some repairs, renovations,

---

[5] The husband's appellate case information statement clearly asserted the commingling argument, which had been stressed earlier in his written summation to the trial court. Although his brief advocating that the trial court inequitably allocated the real properties did not amplify this issue, we reach this important point in the interests of justice because it is such a critical aspect of a proper analysis of equitable distribution in this case. Alpert, Goldberg, Butler, Norton & Weiss, P.C. v. Quinn, 410 N.J. Super. 510, 543 (App. Div. 2009); Otto v. Prudential Prop. & Cas. Ins. Co., 278 N.J. Super. 176, 181 (App. Div. 1994); R. 2:10-2 (codifying the authority to address and rectify plain error not brought specifically to the attention of the "trial or appellate court") (emphasis added). The parties' commingling of money plainly bears upon subsection (i) of the equitable distribution statute, which requires an analysis of the "contribution of each party to the acquisition, dissipation, preservation, depreciation or appreciation in the amount of value of the marital property . . . "). N.J.S.A. 2A:34-23.1(i).

and maintenance of the premarital and marital properties. This overall arrangement lends support to the husband's contention that the wife did not keep the premarital properties separate but, instead, through her actions, gifted them to the marital enterprise.

As noted above, our case law instructs that premarital property may lose its immunity if the owner commingles it with marital assets, with the apparent intent to gift it to the marital enterprise. Ryan, 283 N.J. Super. at 25.

Although we affirm other aspects of its analysis, the trial court did not consider controlling legal principles that concern the commingling of premarital and marital assets. Given the record and the wife's concession of commingling, it was plain error for the court to not take that into account—whether at all or sufficiently—when it distributed the premarital assets to the wife. The matter must be remanded for appropriate and necessary consideration of that issue.

B.

We address some additional points concerning specific parcels of the real property and other issues.

313 Townsend, 74 Welton, and 9 Seventh

The husband takes issue with the court's finding that premises at 313 Townsend, 74 Welton, and 9 Seventh were premarital properties and the equity

14

in them belonged solely to the wife. He argues that he discovered those properties, renovated them, and increased their value such that the wife leveraged those properties to purchase other properties. The trial court made no findings regarding whether the husband's efforts increased the value of these premarital properties.

Notwithstanding the court's generalized credibility findings, the parties agreed that the husband repaired and renovated 313 Townsend and 74 Welton to an extent. Also, the wife purchased 74 Welton in January 1998 for $43,000 and took a mortgage against it in April 1998. She used the money from 74 Welton, as well as proceeds from the other properties, to purchase another parcel at 274 Ward for $65,000, within just a few months of purchasing 74 Welton. This lends credence to the husband's argument that his renovations improved the property's value, as the wife was able to purchase another property soon after she purchased and repaired 74 Welton. The wife did not testify she personally made improvements to 74 Welton. Thus, even if the parties lacked credibility, both essentially agreed that the husband's efforts increased the value of 313 Townsend and 74 Welton.

The wife asserted she paid the husband for his efforts in renovating the premarital properties, but the court made no express findings as to whether she

actually paid him fully for his renovations, and if so, whether this meant the husband should not be credited with their increase in value.

As noted above, our case law instructs that when a premarital asset has increased in value, the non-owning spouse is entitled to equity in the property to the extent that he or she contributed to the increased value of the asset. Valentino, 309 N.J. Super. at 338-39. The court is required to make findings regarding the contributions of each spouse to the increase in the asset's value. Ibid. See also N.J.S.A. 2A:34-23.1(i).

The record also supports the husband's assertion that he improved 9 Seventh by adding a patio, deck, and pool. On remand, the trial court must make express findings as to the amount that the husband's efforts increased the value of that parcel as well.

Given these circumstances, we vacate the court's distribution of 313 Townsend, 74 Welton, and 9 Seventh solely to the wife and remand for an analysis that takes into consideration the commingling of funds, or, alternatively, how much of the increase in the property's value was a result of the husband's efforts.

<u>151 Hale and 157 North Broad</u>

The husband further argues the court erred in its distribution of 157 North Broad. The court found that 151 Hale was a premarital property that belonged solely to the wife. However, she used the proceeds of 151 Hale to purchase 157 North Broad, which the court found to be a marital property subject to equitable distribution. The court ordered for the wife, upon the sale of 157 North Broad, to receive a credit for the money she used to purchase the property originally from the sale of 151 Hale, and for the net proceeds after that credit was deducted to be divided equally between the parties.

The husband argues the court erred in crediting the wife with the proceeds of the sale of 151 Hale because that property should have been considered a marital asset and equally shared by distributed between the parties. Although usually where an immune asset is exchanged for another asset or the proceeds from the sale of an immune asset may be traceable in a new asset, the new asset is likewise immune, <u>see</u> <u>Painter</u>, 65 N.J. at 214, the wife admittedly intermingled all funds from rentals and expenses of premarital and marital properties, including, presumably, 151 Hale. The trial court should therefore reconsider whether 151 Hale was a premarital property that the wife gifted to the marital

17 <span>A-3363-19</span>

enterprise, and whether it should have given her a credit for the amount she realized on the sale of that property.

The Magyar and Other Accounts

The husband argues the court erred in awarding to the wife the Magyar bank account, other accounts in her name, and tax escrow accounts. Because funds generated from both the premarital properties and marital properties were commingled into the Magyar account, the award of that account to her must be reexamined on remand. Case law instructs that if a divorcing spouse holding title to a bank account cannot trace the account balance to premarital, immune assets, that account is distributable. See Ryan, 283 N.J. Super. at 24-25.

The court should further order an accounting of the other accounts in the wife's name to ascertain whether and to what extent proceeds from premarital and marital assets were deposited, as well as to what extent the parties' expenses were paid from those accounts as well.

For similar reasons, the court should order an accounting of the parties' tax escrow accounts.

Vehicles

The court ordered each party to retain the vehicle already in his or her possession as of the time of trial. The husband contends this division was

improper because the wife used funds from the Magyar account to purchase her vehicle, whereas he bought his own vehicle with the proceeds of his share of properties sold after the divorce complaint.

The court should reexamine the vehicles' disposition, pending its evaluation on remand of the commingling issues and a review of the Magyar account.

Repairs Paid for by the Wife

The husband argues the court erred in awarding the wife a credit of $6929 for repairs to the real properties and in not ordering her to notify him when repairs became necessary. The court reasonably determined that, after the filing of the complaint, the husband had the ability to repair the properties, but chose not to do so. Although the husband asserts he simply lacked a crew to do the work at that time, we defer to the trial court in rejecting that factual assertion.

Even though the wife sought $31,705 for repairs, the court ruled that her actual outlay was only $6929 for labor, and fairly credited her with that amount. The court was not required to order the wife to notify the husband before paying others for repairs.

Attorney's Fees

As we noted, the court determined to have each party bear his or own counsel fees expended in the litigation. The court reached that determination after considering various factors under Rule 5:3-5, including the fact that the parties' respective annual incomes are relatively comparable.

The court's fee ruling was well within its broad zone of discretion. See Litton Indus., Inc. v. IMO Indus., Inc., 200 N.J. 372, 386 (2009) (noting the deference owed on appeal in reviewing a trial court's counsel fee ruling); Williams v. Williams, 59 N.J. 229, 233 (1971). Although the husband's attorney charged more in fees than the wife's attorney, we discern no abuse of discretion in the court requiring the parties to bear their own fees. Nor do we second-guess the court's finding that the "mutual recriminations" of the parties were indicative that neither of them singularly acted in good faith concerning the litigation.

Trial Scheduling

The husband complains that the court conducted a nine-day trial over the course of six months. He asserts this intermittent scheduling violated Rule 5:3-6 (favoring continuous trials in the Family Part) and prejudiced him. This argument utterly lacks merit. The Court Rule is aspirational and only applies "[i]nsofar as practicable." R. 5:3-6. The court presided over more than thirty

hours of testimony and proceedings, and it endeavored along the way to accommodate the availability of counsel. We have no reason to infer that the gaps in the trial schedule were more prejudicial to one party than another.

All other issues raised on appeal, including the husband's claim that the trial court was biased against him, lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

Affirmed in part and vacated and remanded in part. We do not retain jurisdiction. The trial court shall convene a case management conference within thirty days to plan the remand.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3363-19